1839.

Van Hook
v.
Whitlock.

## Van Hook and others *vs.* Whitlock and others.

Where an incorporated insurance company, whose stockholders were by its charter made liable for its debts to the extent of their several shares in its capital stock upon a dissolution of the company, made an assignment of all its property and effects, under the act of April 1814, relative to insolvency of incorporated insurance companies; *Held*, that admissions made by the assignees as to the existence of a debt against the corporation were not evidence against the stockholders to prove that such a debt was due at the time of the assignment, in a subsequent suit against the stockholders to charge them individually with the debts of the corporation; *Held also*, that a discharge of the stockholders from personal liability for the debts of the corporation, under the provisions of that act, was inoperative and void as to creditors whose debts arose upon contracts made previous to the passage of the act, and who had not acquiesced in the validity of the discharge by accepting from the assignees their shares or dividends of the proceeds of the assigned property.

It seems that a suit against the stockholders of a corporation to charge them individually for its debts upon a dissolution of the company, being a suit founded solely upon a statutory liability, was barred at the expiration of three years after the right of action accrued, under the provision relative to suits upon statutes contained in the 6th section of the limitation act of April, 1801.

Where an insolvent act discharges the debtor from all further liability for the payment of his debts, upon his making an assignment of his property to trustees for the benefit of his creditors and complying with all the other provisions of the act, a creditor who makes himself a party to those proceedings by coming in and taking a dividend of the assigned property from the assignees, cannot object to the validity of the discharge as to his debt on the ground that it was contracted out of the state, or before the passage of the insolvent act under which the debtor was discharged from liability.

Under an answer in chancery alleging that the complainant's right to sue did not accrue at any time within six years before the filing of his bill, the defendant may insist upon the benefit of a statute of limitations requiring the complainant to bring his suit within three years after his right of action accrued.

In pleading a statute of limitations in bar of a suit it is not necessary in terms to refer to the statute which creates the bar. But it will be sufficient for the defendant to state the necessary facts to bring the case within the operation of the statute, and then to insist that by reason of the existence of those facts the complainant's right or remedy is at an end.

Where from the complainant's bill it appears that he has not brought his suit within the time limited by law for that purpose, the defendant may avail himself of the objection by demurrer, or by insisting upon the benefit of the statute in his answer.

1839.

Van Hook
v.
Whitlock.

January 15.

THIS was an appeal by the complainants from a decree of the vice chancellor of the first circuit dismissing their bill. The object of the bill was to charge the defendants personally, as stockholders of an insolvent insurance company, with the debts of the corporation, under a clause in its charter making them personally liable to the creditors to the extent of their several shares in the capital stock of the corporation at the time of its dissolution. The facts, so far as they are disclosed in the bill, appear in the report of the decision upon the pleas of three of the defendants; which pleas were overruled by the court. (3 *Paige's Rep.* 410.) Those defendants afterwards put in an answer, in which, among other things, they denied all knowledge of the existence of the debts of the several complainants as stated in the bill, or that any claims in favor of the complainants were admitted, liquidated, or adjusted, by any authorized agent or officer of the company. But the defendants admitted that, after the assignment of the corporate funds and the discharge of the corporation and the stockholders, under the act of April, 1814, relative to the insolvency of incorporated insurance companies, the assignees admitted and adjusted the several claims of the complainants, and then paid out of the assigned fund the several dividends upon the amount of the claims thus admitted and adjusted, as stated in the bill. And the defendants therefore insisted, in their answer, that if they, as stockholders of the company, were in any way liable for the claims of the complainants at the time of the assignment, or at any time previous thereto, the acceptance of such dividends under the assignment had precluded the complainants from insisting upon the unconstitutionality of the insolvent law in reference to their claims upon the corporation and the stockholders. The defendants also alleged in their answer that the complainants' rights, or causes of action or suit against them, did not accrue at any time within six years before the filing of the bill in this cause, and that the defendants had not made any promise or done any thing to render themselves liable within that time; denying also the existence of any disability which would prevent the operation of the statute of limitations upon the com-

plainants' claims. Those defendants therefore, in their answer, insisted on the several statutes for the limitation of actions, and each and every of them, as a full and perfect bar to this suit; and claimed and prayed the protection and benefit thereof as fully and effectually as if the same had been, in due form, specially pleaded. The other defendants put in answers containing the same defence in these respects, in substance, but differing in some particulars in form. Replications were filed to the answers; and the cause was referred to the vice chancellor, and was heard upon the pleadings and proofs. He decided that, under the act of 1813 for the limitation of actions at law, the complainants were bound to bring their suit within three years after the dissolution of the corporation, in January, 1820, to charge the stockholders individually under the act incorporating the company. And that the defence was sufficiently set up in the answers to entitle the defendants to the benefit thereof at the hearing. Upon this ground, therefore, and without expressing any opinion upon the other objections to the complainants' right of recovery, which were made by the defendants' counsel upon the argument, he decreed a dismissal of the bill. And from that decree the complainants appealed to the chancellor.

*R. Sedgwick & D. D Field,* for the appellants. As the answer of the defendants sets up the statute of limitations containing a bar of six years, the defendants cannot avail themselves of the statute creating a bar of three years. The defence of the statute, in so far as it concerns the corporation, is not well pleaded; the defendants should have stated that the corporation did not promise at any time within six years before the eleventh of January, A. D. 1820. The answer that they did not promise within six years before the filing of the bill, is nought, and that they did not promise since the fifteenth of July, A. D. 1814, is bad, inasmuch as it is sufficient, if they promised since January eleventh, A. D. 1814. There could have been no bar as to the corporation, because the act incorporating the company makes the policies specialties, or what is equivalent thereto. Besides, some of the debts were then in judgment,

1839.

Van Hook
v.
Whitlock.

and all were acknowleged within six years, before January eleventh, A. D. 1820. The 6th section of the limitation act of 1801, does not apply to this suit. That section relates to grievances and wrongs, and not to contracts. If that section was applicable, the payment of the dividends within three years, as proved would prevent the bar. The complainants are not precluded by the discharge of the corporation, or the payment of dividends. (14 *Wend.* 100. 3 *Cowen*, 159.) There must be a decree against the defendants ordering them to pay the debts of complainants rateably, according to the amount of stock held by them.

*J. Anthon & G. Griffin,* for the respondents. The admissions of the assignees of the company are not binding on the stockholders. The 6th section of the act of limitations of April, 1801, is applicable, as this is a suit upon a statutory liability. The right of action was barred, because the suit was not commenced within three years after the right of action accrued. And under the allegation in the answer that the complainants' right of action did not accrue within six years previous to the filing of the bill, the defendants may insist upon the benefit of a statute of limitations requiring the suit to be brought within three years after the right of action accrued. (1 *Mason,* 259. 4 *John. Ch. Rep.* 130. 3 *Paige's R.* 422. *Hopkins,* 305. 8 *Cowen,* 390. *Slee* v. *Bloom,* 2 *Durn. & East,* 160. 1 *Salk.* 30. *Com. Dig. tit. Statutes, a* 1.) The complainants, having accepted a dividend from the assignees of the corporation, cannot object to the validity of the discharge of the corporation as to their entire debt, (1 *Nott & McCord,* 480. 1 *Bay,* 435. 3 *Story's Com.* 256. 3 *Cowen,* 164. 17 *John.* 85. 3 *Peters,* 411, 2 *Kent's Com.* 616, 2d ed. *Paley on Agency,* 165.)

THE CHANCELLOR. I am inclined to think there was a failure of proof on the part of the complainants, as to the existence of the demands of some of them against the corporation for the purposes of this suit. To entitle them to recover against these defendants as stockholders they must show, by proof which is valid and binding upon the defend-

ants, that they had a legal demand, upon which they could have succeeded in sustaining a suit against the corporation previous to its dissolution in 1820. Even if the complainants did not now attempt to repudiate the assignment and the discharge of the corporation and its stockholders, under the insolvent act of 1814 as unconstitutional and void against them, the admissions or acts of the assignees would not be legal evidence of the existence of the debt against the corporation. So far as related to the fund in their hands the assignees had a perfect authority to settle and adjust all claims against the corporation. But as their admissions or adjustments of claims were for the mere purpose of ascertaining who were entitled to distributive shares of that fund, and as the assignees were not the agents of the corporation or of its stockholders, their admission of a claim and the payment of a dividend thereon would not have enabled the claimant to recover against the corporation for the balance, without other evidence that his claim was a legal or equitable debt of the corporation. It is not necessary for me, however, to go into an examination of the details of the evidence as to the existence of the several debts against the corporation previous to July, 1814, or to decide the question whether the failure of one of the complainants to prove his debt would authorize a dismissal of the bill as to all. For I am satisfied there are other objections which are fatal to the right claimed by each and all of the complainants to a decree in this suit.

The debts claimed to have been due from the corporation are all stated to have been contracted previous to the passage of the act of April, 1814, authorizing the discharge of insolvent insurance companies and their stockholders from liability for their debts upon making an assignment of the corporate effects for the benefit of the creditors. As the creditors therefore had a contingent claim against the stockholders for the payment of their debts, in case of a dissolution of the company, as well as a direct claim upon the corporate property, the act of 1814 is inoperative as to them, according to the settled law of the land, unless they have done some act recognizing the validity of the law under

which such discharge was authorized. But the counsel for the respondents upon the argument of this appeal endeavored to show, and I think they succeeded in doing so, that by coming in under the proceedings and taking their shares of the dividends from the assignees, the appellants have deprived themselves of the power to object to the constitutionality of the assignment of the corporate property under the order of the chancellor, which is declared to be a discharge of the defendants under the act. The revised statutes of this state recognize the principle that a creditor, whose debt would not otherwise be barred by a discharge under the insolvent act in consequence of the prohibition in the constitution of the United States, will lose his remedy against the future acquisitions of the insolvent by accepting a dividend of his estate from the assignees. (2 *R. S.* 22, § 30.) And as I understand the case of *Clay* v. *Smith*, (3 *Peters' Rep.* 411,) the supreme court of the United States there decided that the acceptance of a dividend, under the insolvent law of Louisiana, by a creditor whose debt would not have been otherwise discharged, on account of his extra territorial immunity from the operation of the insolvent laws of that state which were in force when the debt was contracted, deprived him of the right to object to the constitutionality of the law. It is true that case is very imperfectly reported, so that it is difficult to understand the precise facts upon which the decision was founded. It is evident, however, that it must have been a case in which the constitution of the United States would have protected the creditor from the operation of the state law if he had not assented to it, by coming in and taking a dividend of the insolvent's estate from the assignees under the proceedings in the *cessio bonorum*. And so Mr. Justice Story appears to understand this decision of the court of which he was a distinguished member ; for in his commentaries on the constitution, (3 *Story's Com.* 256,) after stating the several cases in which the contract of the creditor will be exempt from the operation of state insolvent laws discharging the debtor from further liability, he says : " Still, however, if a creditor voluntarily makes himself a party to the proceedings under

an insolvent law of a state which discharges the contract, and accepts a dividend declared under such law, he will be bound by his own act, and will be deemed to have abandoned his extra territorial immunity." And he refers to the case of *Clay* v. *Smith*, to support this principle. Judge Cheeves also, in reference to a provision in the insolvent law of South Carolina adopting the same principle, says, there can be no doubt as to the validity of that provision in the statute ; that its effect is no greater than that of a private deed or composition ; and that its obligation arises in the same way, from the voluntary consent and agreement of the creditor.

Again ; I am inclined to the opinion that the vice chancellor's decision was right as to the question upon which he based his decree. When this case was formerly before me the counsel for the defendants had overlooked the provision in the sixth section of the act of limitations of April, 1801, (1 *R. L. of* 1813, *p.* 187,) relative to suits upon statutes. And it was therefore supposed that if the six years limitation did not apply to such suits there was no time limited for the commencement of such a suit at law. But the form of the defence set up at that time did not call for any expression of opinion on that question ; as the decision must have been the same as to the invalidity of the pleas, whether the limitation of the corresponding suit at law, by an action of debt upon the statute, was three years or twenty. And the pleas could not perform the office of a demurrer, or of an objection in the answer in the nature of a demurrer, that it appeared upon the face of the bill that the remedy of the complainants was gone by lapse of time. (*Billing* v. *Flight*, 1 *Mad. Rep.* 230. *Cowen* v. *Price*, 1 *Bibb's Rep.* 175.) The provision of the statute upon which the decision of the vice chancellor was founded is as follows : " And that all actions or informations which shall at any time hereafter be brought, sued, or exhibited for any forfeiture, *or cause,* upon any statute made or to be made, the benefit and suit whereof is or shall be given or limited to the party aggrieved, shall be brought, sued, or exhibited, within the space of three years next after the offence committed or to

1839.

Van Hook
v.
Whitlock.

be committed, *or cause of action accrued,* and not after." The other provisions of this section were originally taken from the fifth section of 31st Elizabeth, chapter 5th, in the revised act of February, 1788, for the limitation of criminal prosecutions and of actions and suits at law, (2 *Greenl. Laws,* 93 ;) where the provision in question was first adopted in this state. No corresponding provision appears to have existed in any statute, either here or in England, previous to that time. And it is a somewhat remarkable fact that, although this provision has existed in our statute books for fifty years, no case appears to have arisen in which any court has been called on to give it a construction in reference to the limitation of actions of debt founded upon a statute liability only. The appellants' counsel insist that as it relates to suits whereof the benefit is given to *the party aggrieved* it must be confined to actions for penalties or forfeitures, or to suits upon statutes which are penal in their nature. But the words of the law are as applicable to the case of the creditors of a corporation who are aggrieved by the dissolution of the company, leaving its debts unpaid, as they are to a party aggrieved by an act of the defendant which is prohibited by statute, or by his omission to do some act or duty required of him by statute, and for which he is subjected to an action for a penalty or forfeiture for the benefit of such party. And the language adopted by the legislature shows that the provision was intended to apply to actions upon statutes for other causes than for penalties and forfeitures. There was a class of actions upon statutes which were not reached by any of the provisions of the acts previously in force for the limitation of suits at law ; among which were all actions of debt founded upon a statute liability only, not embraced in the 5th section of the statute of Elizabeth. And when the revisers, and the legislature of 1788, were framing a general limitation law, is it not more reasonable to suppose that in introducing this new provision they intended to embrace all cases of that class, when they use language that is sufficiently broad to produce that effect, than to presume they meant to confine it to a part of that class ; especially where no reasons existed for

fixing a limitation to some actions of that class only and not as to the others. It is very doubtful, however, whether by this provision they intended to include any of that class of actions which were founded partly upon the common law and partly on a statutory provision which was not in the nature of a forfeiture ; and which class of actions were already provided for in the previous sections of the revised act of 1788.

I have no doubt whatever upon the question that if this case is within that clause of the act, the answer is sufficient to enable defendants to avail themselves of that defence at the hearing. In the case of *Bogardus* v. *The Trinity Church*, (4 *Paige's Rep.* 178,) this court decided that even in the case of a technical plea it was not necessary to refer to the statute creating the bar. But that it was sufficient to state the facts necessary to bring the case within the operation of the statute, and then to insist that by reason of those facts the complainants right or remedy was at an end. The defendants in that case pleaded an entry under color and claim of title in 1705, and an adverse possession from that time down to the filing of the bill ; more than one hundred and twenty-five years afterwards. And that was held sufficient, although it was not stated in the plea that an adverse possession for that length of time must necessarily include the shorter period of twenty years limited by law for bringing a possessory action for the recovery of the lands and the rents and profits thereof. In the present case the allegation in the answer that the complainants' right of action, if any, had not accrued within six years, necessarily covered the shorter period of three years limited by this clause of the sixth section of the statute. And the subsequent claim, in the answer, of the benefit of every limitation act of the state, was sufficient notice to the complainants that the defendants would, upon the hearing, claim the benefit of this public law as a defence to the suit ; as the laws of the state are in legal contemplation known to all.

Besides ; the fact that the complainants' right of action or suit accrued in January, 1820, and of course more than nine years before the commencement of the suit, appeared

upon the bill itself. No process of subpœna can be issued, in this court, until the bill is filed. (2 *R. S.* 179.) And the time of filing of the bill is endorsed thereon, and becomes part of the record of which the court judicially takes notice, upon a demurrer to the bill. The intention to insist upon the several statutes of limitations as a defence may, therefore, be considered as an objection in the answer in the nature of a demurrer. And it is now settled that where it appears from the bill itself that the complainant has not brought his suit within the time allowed by law for that purpose, the defendant, *in this court,* may avail himself of the objection by demurrer. (*See Humbert* v. *Trinity Church, ante,* 195 ; *Tyson* v. *Pole,* 3 *Young & Coll.* 266.)

The decree of the vice chancellor dismissing the complainants' bill is therefore affirmed with costs. The decree of affirmance is to be entered nunc pro tunc as of the time of the commencement of the first argument on the appeal; some of the parties having died subsequent to that time.