GEORGE T. BROWN, Plaintiff in Error, *v.* WILLIAM R. PARKER,
Defendant in Error.

### ERROR TO MADISON.

In this State, if a plaintiff dies after judgment rendered, his personal represent-
ative, on recording in court the letters of administration, may sue out an ex-
ecution in his own name.

If a defendant dies after judgment, the plaintiff may sue out an execution
against his lands and tenements, on giving his personal representative three
months' notice of the existence of the judgment. These are concurrent
remedies with the common law proceeding by *scire facias.*

All process must bear *teste* of the day on which it is issued, and an execution
does not relate back to the entry of judgment.

Where either party to a judgment dies before execution issues, the judgment
must be revived by *scire facias*, or execution must be sued out in the mode
prescribed by the statute.

Where an execution was sued out in the name of a deceased plaintiff long after
the death of a judgment creditor, without reviving the judgment in favor of
his personal representative, or recording his letters of administration, the ex-
ecution and all the proceedings under it will be absolutely void.

THIS cause was tried at March term, 1852, of the Madison
Circuit Court, UNDERWOOD, Judge, presiding. The opinion of
the court embodies a statement of the case.

R. S. BLACKWELL and S. T. SAWYER, for plaintiff in error.

H. W. BILLINGS and LEVI DAVIS, for defendant in error.

TREAT, C. J. This was an action of ejectment, brought by
Brown against Parker, to recover an undivided half of lots
twelve and thirteen, in block ninety-two, in the city of Alton,
Madison county.

It appeared on the trial, that both parties claimed title to the
premises through William Manning; that Manning conveyed
an undivided third part of lot thirteen to Cowles and Kram, on
the 10th of June, 1837, and that the deed was recorded on the
26th of June, 1838; that the plaintiff derived title to an un-
divided sixth part of lot thirteen through Cowles, by a deed
dated the 26th of November, 1849, and recorded the 9th of
January, 1850; that the plaintiff also derived title to an undi-
vided eight thirtieths of lots twelve and thirteen, by a convey-
ance from Manning to Taft, dated the 23d of May, 1838, and
recorded the 26th of the same month, and by a deed from Taft

to the plaintiff, dated the 29th of November, 1849, and recorded the 9th of January, 1850; and that the defendant was in possession of the premises when the suit was commenced.

The defendant introduced a judgment, rendered in the Madison circuit court, on the 12th of February, 1838, in favor of Jenkins and Merritt, and against Manning and others; and also an *alias* execution issued thereon, on the 20th of May, 1844, under which the premises were sold to Bailey, for $150, on the 29th of July, 1844. He also introduced a judgment, rendered in the Alton municipal court, on the 22d of January, 1839, in favor of Pierce and against Manning and others; and also an *alias* execution issued thereon, on the 29th of July, 1845, under which the premises were redeemed from the prior sale, on the 7th of August, 1845, by Paine, claiming to be the owner of the judgment, and under which the premises were sold to Paine for the amount of the redemption money, on the 27th of August, 1845, and conveyed to him by the sheriff, on the 25th of April, 1851. Bailey acted as the attorney of Paine, and received the redemption money.

The plaintiff then proved that Pierce died on the 10th of June, 1840, and that no assignment of the judgment was ever filed in the case; and he thereupon moved to exclude from the jury the execution and the proceedings thereon, which motion the court denied.

The jury found the issue for the defendant, and the court entered judgment on the verdict.

By the common law, all proceedings in a suit at law were arrested by the death of one of the parties. If either of them died before judgment, no judgment could be entered, but the suit abated; if he died after judgment, no execution could be issued, but the judgment had to be revived by *scire facias*. The courts resorted to the doctrine of relation to obviate the inconvenience of this rule. They held that a judgment should be considered as entered on the first day of the term. Where a party died after verdict and before judgment, the judgment was entered *nunc pro tunc*, and related back to the commencement of the term. An execution could be issued bearing *teste*, as of the term in which the judgment was rendered; and when so tested, though actually sued out after the death of a party, it was held to relate back to the entry of judgment. And where a levy was made during the life of a party, his death did not prevent the sheriff from completing the execution of the process. Heapy *v.* Parris, 6 Durnford & East, 366; Brayner *v.* Langmead, 7 Ib. 19; Odes *v.* Woodward, 2 Lord Raymond, 766 and 849; Clerk *v.* Withers, Ib. 1072; Copley *v.* Day, 4 Taunt.

702; Calvert *v.* Tomlin, 5 Bing. 1; Watson *v.* Maskell, 4 Moore & Scott, 461; 2 Tidd's Practice, 1000.

This inconvenience occasioned the passage of statutes relating to the abatement of suits, which provided that a suit should not abate by the death of either party, where the cause of action survived to or against his legal or personal representative, but that the proper representative might be made a party, and the suit be prosecuted to final judgment. These statutes only embraced cases in which one of the parties died before judgment. They left the common law in force as to cases where a party died after judgment. Our statute has changed the common law in this last respect. If a plaintiff dies after judgment, his personal representative, on recording in court the letters of administration, may sue out an execution in his own name. If a defendant dies after judgment, the plaintiff may sue out an execution against his lands and tenements, on giving his personal representative three months' notice of the existence of the judgment. These are concurrent remedies with the common law proceeding by *scire facias*. According to our statute, all process must bear *teste* of the day on which it is issued. An execution, therefore, cannot be held to relate back to the entry of judgment. It follows, where either party dies before execution issues, that the judgment must be revived by *scire facias*, or an execution must be sued out in the mode prescribed by statute.

In this case, the execution was sued out several years after the death of the judgment creditor, without first reviving the judgment in favor of the personal representative, or recording in court his letters of administration. It was also issued in the name of the deceased plaintiff, and not in that of his personal representative. All this was clearly irregular and unauthorized. Was the execution, thus issued, void or voidable? If void, the proceedings upon it were mere nullities, and the purchaser acquired no title; if voidable only, those proceedings cannot be attacked collaterally, but they stand good until set aside or reversed on motion or writ of error. On common law principles, it is clear that the execution and all the proceedings thereon are absolutely void. The death of Pierce arrested all proceedings in the case. There was no longer a party *in esse*, competent to sue out execution on the judgment, or receive payment and enter satisfaction thereof. The legal interest in the judgment passed to the personal representative of Pierce, in whose name alone payment could be enforced. It was necessary that he should become a party to the record, before any steps could be taken to secure the collection of the judgment.

The law prescribed two modes in which that might be done, and it was essential that one of them should be pursued. There is, indeed, some difference of opinion in the United States upon this question. The courts in New Hampshire, Pennsylvania, and Mississippi decide that an execution, issued after the death of a defendant, without the judgment being revived against his proper representative, is voidable only, and cannot be impeached collaterally. Butler *v.* Haynes, 3 New Hamp. 21; Speer *v.* Sample, 4 Watts, 367; Doe *v.* Hamilton, 23 Miss. 496. But the weight of authority is decidedly the other way. It is held in the following cases, — and more to the same effect might be cited, — that the proceedings upon an execution, sued out after the death of one of the parties, without first reviving the judgment for or against the proper representative, are absolutely void, whether their validity be drawn in question directly or collaterally. Erwin's Lessee *v.* Dundas, 4 How. S. C. 58; Hildreth *v.* Thompson, 16 Mass. 191; Stymets *v.* Brooks, 10 Wend. 207; Lessee of Massie's Heirs *v.* Long, 2 Ham. 287; The State *v.* Pool, 6 Ired. 288; Howard *v.* Rawson, 2 Leigh, 733; Gwin *v.* Latimer, 4 Yerg. 22; Abercrombie *v.* Hall, 6 Ala. 657; Webber *v.* Kenney, 1 A. K. Marshall, 345; The State *v.* Michaels, 8 Blackf. 436. It is true that most of them are cases of the death of the defendant. But there is no difference in principle between the two cases. Judicial proceedings cannot be carried on in the name of a dead man. There is as much necessity for a plaintiff as a defendant. The proceedings in a case are as much arrested by the death of one as the other.

The sale upon the first judgment was avoided, by the receipt of the redemption money by the purchaser. If he had refused to receive it, the attempt to redeem might have proved ineffectual. But he could not at the same time have both the money and the land. By accepting the money, he relinquished all claim under the purchase, and could not afterwards assert title.

The court erred in not excluding the execution and the proceedings thereon from the jury; and the judgment must be reversed, and the cause be remanded.

*Judgment reversed.*