ADAM KARR

*v.*

EBER PEACOCK.

*Filed at Mt. Vernon May 9, 1891.*

1. CONTRACT — *waiver of performance on the day.* Where a party agrees to acquire the title to lands sold under execution, by redemption or otherwise, and to convey the same to another, on the latter paying the costs and expenses of acquiring and protecting the title. within one year from the date of the contract, if the party acquiring the title accepts payment of his advances and interest thereon after the time fixed in the contract, he will have waived his right to prompt payment, and be treated in equity as holding the legal title in trust for the other party, as the equitable owner.

2. LIEN — *equitable extinguishment.* Where a party employed to redeem lands sold, pay off liens and taxes, and perfect the title thereto,

for which he is to be repaid his advances and interest, in redeeming acquires a sheriff's deed to other land not named in the contract, if he accepts from the party employing him the full amounts paid by him, with interest thereon, his lien on the land will in equity be extinguished, and the land may be sold on execution against the owner.

APPEAL from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

This is a bill to set aside a certain deed as a cloud on the complainant's title. The material facts, substantially as stated by counsel for appellant, are:

The land in controversy consists of a tract of perhaps thirty acres, which lies between the old and the present bank of the Mississippi river. It is the extreme north-west end of surveys 174, 175, 176 and 177. It is located in the lower left hand corner of the plat, and is marked, "Land in dispute." The dotted line, marked "Old river bank," is the south-eastern limit of the tract. Prior to 1872 Andrew Donnan was the owner of that part of surveys 167 to 177, inclusive, which comprise, first, the land in dispute; second, lot 22, ninety-six acres; third, lot 23; fourth, Meier Iron Company, one hundred acres; and fifth, lot 21, as shown by this plat:

On July 23, 1873, Donnan and wife conveyed to the Meier Iron Company the one hundred acre tract. On the 25th day of October, 1877, Donnan gave a trust deed on lot 22 (ninety-six acres) to Schrader, as trustee, to secure to Hoeffner a note

for $3000. The north-west boundary of this tract is the old bank of the river. Karr purchased the Hoeffner note, and on May 26, 1879, Schrader, the trustee, sold this land, and Karr purchased it for $2000.

At the September term, 1878, the Lumbermen's and Mechanics' Insurance Company recovered against Andrew Donnan a judgment for $4514.63, on which execution was issued, and levied on lots 23, 21 and 22, including the land in dispute,—that is, it was levied on all the five parcels herein first described, except the one hundred acre tract belonging to the Meier Iron Company. On January 8, 1879, the insurance company bought this land for their judgment and costs, and on December 4, 1879, assigned its certificate of purchase to Theodore Karr.

At the September term, 1879, Amy J. Donnan recovered a judgment against Andrew Donnan for $12,972.50, which she, on March 16, 1880, assigned to Adam Karr, and under this judgment Adam Karr redeemed from Theodore Karr, and on the 14th day of April, 1880, Adam Karr received a sheriff's deed for all the land levied on under the insurance company's judgment. It will be seen that this covers the ninety-six acre tract, (part of lot 22,) which Karr had previously purchased under the Hoeffner deed of trust, and by this sheriff's deed Karr gets title to the land in dispute. On April 12, 1880, Karr recovered judgment against Donnan for $1474.51, for the unpaid balance due on the Hoeffner note.

On March 16, 1880, Adam Karr and Amy Donnan entered into an agreement, which recites that Amy Donnan had that day assigned to Adam Karr her $12,972 judgment, and Karr agreed, that upon the payment to him, on or before March 16, 1881, of the total amount of money paid out and expended by him in redeeming and purchasing the real estate hereinafter described, and for taxes paid out by him on the same, together with all other legal and just claims of the said Karr against said Andrew Donnan, with interest on said several

24—137 ILL.

amounts at eight per cent per annum, he (Karr) would convey to said Amy all right and title to certain described lands.

By reference to the plat it will be seen that the land which Karr agreed to convey to Amy is the hatchet-shaped piece marked lots 21 and 23. The survey commences at the letter A, at the lower right hand corner of lot 23, thence to B, thence to C, thence to D, thence to E, thence to F, and thence back to A.

By his sheriff's deed of April 14, 1880, Karr not only acquired title to the hatchet, (lots 21 and 23,) but also to the land in dispute, and also a second title to the balance of lot 22, he having previously acquired title to the last named lot under the Hoeffner trust deed. Karr's agreement was, that upon the making of the specified payments to him he would convey to Amy J. Donnan the hatchet,—lots 21 and 23.

On April 15, 1881, Peacock, having procured the contract from Amy J. Donnan, came to Belleville and had a settlement with Karr, and it was found that there was then due to Karr, under the contract between him and Amy, the sum of $8890.83, which sum Peacock paid to Karr, and Karr, at the request of Peacock, conveyed the hatchet to Newell G. and John W. Larimore. This conveyance was also made at the request of Amy J. Donnan.

On the 30th day of January, 1883, Peacock had *alias* executions issued on these judgments. On February 28, 1883, the land in dispute was sold under these executions, and purchased by Peacock, and in due time he obtained a sheriff's deed therefor, and complainant now claims under that deed, while Karr claims under his sheriff's deed of April 14, 1880.

The complainant testified that he was employed by the St. Louis and Eastern Railroad Company, which was incorporated to construct a road from East Carondelet to Belleville and adjoining towns, and which wanted the right of way through the lands lying near the river at East Carondelet; that the title to the land in controversy was supposed to be

in Andrew Donnan, and that an understanding was had between complainant and him, whereby the company, represented by complainant, should redeem from prior sales, and terms would then be adjusted with reference to the right of way. Complainant entered into a contract with Amy Donnan in furtherance of this undertaking, whereby she transferred to complainant her interest in the contract with Karr. On the 15th of March, 1881, complainant paid to Karr $8890.83, being the full amount of his claims against Andrew Donnan, as manifested by his statement to that effect, as follows:

| | | | |
|---|---|---|---|
| March 16, 1880. | Lumbermen's and Mech. Ins. Co. . . . . . . . . . . . . | | $5,223 50 |
| | Eight per cent. int. 10 months and 29 days. . . | | 381 90 |
| April 12. . . . . . . | Judgment—A. Karr *v.* A. Donnan. . . . . . . . . . . . | | 1,474 51 |
| | Costs paid on same. . . . . . . . . . . . . . . . . . . . . . . | | 8 45 |
| | Atty's fees paid : Kraft $25, Winkelman $20. . | | 45 00 |
| | Six per cent int. 11 months 4 days, on $1527.96 | | 85 00 |
| March 16. . . . . . | Note—A. Donnan due A. Karr. . . . . . . . . . . . . . | | 800 00 |
| | One year's int. 8 per cent. . . . . . . . . . . . . . . . . | | 64 00 |
| August 12. . . . . | Costs paid on judgment. . . . . . . . . . . . . . . . . . . | | 7 10 |
| | Tax sale of land . . . . . . . . . . . . . . . . . . . . . . . . | | 1,122 92 |
| | Eight per cent int. 7 months 4 days. . . . . . . . . | | 53 40 |
| November 16. . | To repairs on house . . . . . . . . . . . . . . . . . . . . . | | 350 00 |
| | Rock for foundation of house . . . . . . . . . . . . . . | | 25 00 |
| | Int. at 8 per cent, 4 months, on $375. . . . . . . . . | | 10 00 |
| | | | $9,650 78 |
| Cr. | | | |
| July 27, 1880. . . | By rent, Hy. Sutton. . . . . . . . . . . . . . . | $428 90 | |
| August 12. . . . . | By rent, John Ortgier. . . . . . . . . . . . . . | 255 55 | |
| August 17. . . . . | Hy. Sutton and other renters . . . . . . . . | 47 60 | |
| | | 20 90 | |
| | | | 752 95 |
| | Total amount due March 16, 1881. . . . . . . . . . . . | | $8,897 83 |
| | Lease, off. . . . . . . . . . . . . . . . . . . . . . . . . | $10 00 | |
| | | 3 00 | |
| | | | 7 00 |
| | | | $8,890 83 |

Karr then gave complainant his receipt, as follows:

"BELLEVILLE, ILL., *March 15, 1881.*

"In consideration of the payment to me this day of eight thousand, eight hundred and ninety dollars and eighty-three cents, being the full amount of my claims against Andrew Donnan, I hereby agree and obligate myself to assign a cer-

tain judgment held by me against said Donnan, of date April 12, 1880, in the sum of $1474.51, to Mr. Eber Peacock; also, to cancel the tax purchase of the lands this day conveyed by me to Newell G. and John W. Larimore; also, to assign to said Eber Peacock a judgment for $12,972.50, recovered by Amy J. Donnan against Andrew Donnan, at the September term, A. D. 1879, of St. Clair county circuit court.

"Witness: Louis P. KRAFFT."                 A. KARR.

This was all in pursuance of a written request by Amy Donnan, as follows:

"*To A. Karr:*

"SIR—You are hereby requested to assign to Eber Peacock, of St. Louis, a certain judgment obtained by me in the circuit court, county of St. Clair, Illinois, against Andrew Donnan, at the September term, A. D. 1879, for $12,972.30; also, a certain judgment rendered in your favor, dated April 12, 1880, against said Andrew Donnan, for $1474.50, in said circuit court, St. Clair county, Illinois, both said judgments being held by you on March 15, 1887.

"Yours truly,                 AMY DONNAN.
ST. LOUIS, *September 26, 1881.*"

The court decreed as prayed, setting aside the title claimed by appellant as a cloud upon that of appellee, and the case comes directly here, a freehold being involved, by the appeal of Karr.

Messrs. DILL & SCHAEFER, for the appellant:

The insurance company sold, under its judgment, not only lots 21 and 23, but also the land in dispute and the ninety-six acre tract (lot 22.)   Adam Karr, as assignee of the $12,-972 judgment, redeemed all this land from the sale under the insurance company's judgment, and at the redemption sale bid simply the amount due on the certificate of purchase,—that is, the redemption money,—and sheriff's deed was made to him for all the lands.   Karr then had a complete title to

the land he had agreed to convey to Amy Donnan, viz., lots 21 and 23, and was in a position to perform his contract with her, the only property he was obligated to convey, and when he conveyed these lots to Peacock, at the request of Miss Donnan, he had discharged his obligation.

The judgment having been paid by Peacock, he had no right to have execution thereon and sell the lands again. Donnan, in 1883, had no interest in the lands to be sold.

Mr. EBER PEACOCK, *pro se*, and also Messrs. WILDERMAN & HAMILL, for the appellee:

The contract relied on by defendant was an agreement between himself and Amy Donnan, that if she paid him what he had paid out in redeeming the particular land described in the contract, and taxes thereon, together with all other legal and just claims of Karr against Andrew Donnan, with interest, etc., he would convey that particular land to Amy Donnan.

The account presented by Karr not only included all that the contract called for, and as well every dollar of expense or claim that Karr could possibly have against Donnan, but also included all that he had paid out to redeem a much larger body of land, (about four hundred and fifty acres,) and taxes thereon, of which the contract portion was only a part, and in fact included the very basis of his claim, the Lumbermen's and Mechanics' Insurance Company's judgment, as well as his own judgment,—all of which was paid by the complainant, and such payment had the effect of subrogating complainant to whatever rights Karr had acquired by, through or under any of such judgments and claims.

If the payment by complainant to Karr is to be construed as a satisfaction of the judgments *pro tanto*, then it left the land in controversy freed and discharged of any claim of defendant, Karr, for he had received his money, and certainly could not, in equity, hold money and land as well, and the title to the land in controversy would then be in Andrew Don-

nan, with no claim unsatisfied against him but the judgment of Amy Donnan.

The judgment of Amy Donnan against Andrew Donnan, of over $12,000, having been assigned to defendant as collateral security for the performance of the contract with defendant, Karr, (so Andrew Donnan testified, and no one controverts the fact that Karr obtained such assignment simply to protect himself,) and not having been satisfied in full by sale or payment, Karr held that judgment as a trustee, for the benefit of Amy Donnan, for all over and above his claims, and the moment payment was made him of all that he was entitled to receive, the title of Amy Donnan to the judgment re-asserted itself, and a court of equity, on refusal, would have compelled Karr to re-assign it.  He had no further claim on it.

The judgment of defendant, Karr, against Andrew Donnan, of April 12, 1880, having been paid him in full, with interest, amounting to $1474.51, by complainant, and Karr having bought in the property mentioned in the contract under that judgment at redemption sale, for which property so purchased he made a deed to the Larimores, had that judgment been satisfied by Karr the deed would have had no basis on which to rest, Karr receiving the whole of the judgment in money, hence it was his duty to leave the judgment unsatisfied.  He had no further claim on it, and as complainant was not the judgment debtor, he, in equity, had a right to have the judgment assigned to him to protect the payments made by him on account of it.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

No question arises on this record between appellee and Andrew or Amy J. Donnan.  So far as here appears, the redemption and sale, and sheriff's deed pursuant thereto, of the land in controversy, to appellee, Peacock, vest in him a complete title, both legal and equitable, unless prior to the time of that

sale the equitable as well as the legal title to the land was in appellant, Karr, by virtue of the prior sheriff's deed to him; and it may be admitted that he had the prior legal title, the only question being, whether, under the facts in evidence, he is not to be regarded as, in equity, holding that title in trust for appellee, Peacock.

The agreement between appellant and Amy J. Donnan only obligated him to convey to her the land therein described, not including that here in controversy, and on the other hand, it only required her to pay to him "the total amount of money paid out and expended by him in redeeming and repurchasing" the land therein described, and for taxes, etc. But Peacock paid to him not only the sum thus required to be paid, but the entire amount which he had paid in redeeming from the sale of the Lumbermen's and Mechanics' Insurance Company, together with interest thereon, which includes the amount he paid to redeem the property in dispute from that sale. He has thus received every cent that it would have been necessary to have paid him to redeem this property from that sale had the attempt to redeem been made in apt time, and it is not equitable that he shall retain both the redemption money and the property. It is true that he could not have been compelled to accept the redemption money, because the payment was made too late; but by accepting it he waived his rights in that respect, and must be treated, in equity, as holding the legal title in trust for the equitable owner. It is of no consequence that there is no privity between Andrew Donnan and the party paying the money. It is unimportant to appellant what rights Peacock acquires by the payment, since by accepting the payment his lien on Andrew Donnan's land is, in equity, extinguished, and removed out of the way. *Borders* v. *Murphy,* 78 Ill. 81; *Clingman et al.* v. *Hopkie,* id. 152; *Meyer* v. *Mintonye,* 106 id. 414; *Pearson* v. *Pearson,* 131 id. 464.

We find no error in the decree, and it is therefore affirmed.

*Decree affirmed.*