(No. 21477.—

Lee Fyffe *et al.* Appellees, *vs.* Roy Fyffe *et al.* Appellants.

*Opinion filed December 23, 1932.*

GEORGE W. LACKEY, for appellants.

SHAW & HUFFMAN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The appellees, Lee Fyffe and Cynthia Holsen, filed a bill in the circuit court of Lawrence county to partition the northwest quarter of the northeast quarter of section 31, town 4 north, range 12 west of the second principal meridian, containing 38.71 acres. The land was owned at the time of her death, on September 30, 1893, by Ella Fyffe. She died intestate, leaving her husband, Charles Fyffe, and their four children, Grace, Roy, Pearl and Julia, her heirs. The family lived with Charles' mother, who was a widow, on a farm known as the home place, about a mile and a half from the land in question here, which had belonged to her husband, Charles' father, in his lifetime. Charles married again in 1896, and he and his second wife had three children, Fred, Cynthia and Lee, born between 1897 and 1900. The second wife died soon after the birth of the youngest child and the family continued to live all together with Charles' mother. Pearl, the oldest, and Julia, the youngest of the children of the first marriage, died within two weeks of one another, in April, 1905, both unmarried, and their heirs were their surviving brother and sister, the children of the first marriage, their father, and the three children of the second marriage. No person lived on the land in question as a homestead or as a tenant. The premises were unimproved by any buildings, but Charles farmed them during the lifetime of his first wife and continued to do so after her death for a short time. On March 22, 1906, acting individually and as guardian for Roy, together with Grace, who was then eighteen years old, he executed an oil and gas lease of the premises to C. L. Wise. The lease included the two farms, called farm No. 1 and farm No. 2, No. 1 being the farm which had

belonged to Charles' first wife in her lifetime, and No. 2 being the farm of 68 acres which Charles' father owned in his lifetime and on which Charles and his children and mother lived together as one family and in which she had an interest. Various assignments of this lease have been made to different persons and the International Oil and Gas Company has operated it continuously since 1911.

By the death of Ella Fyffe, Charles' first wife, he became entitled to dower in the premises, and his four children inherited each one-fourth of the premises, subject to his dower. All the children of the second marriage were born before the death of the two children of the first marriage, and the heirs of the latter were therefore their full brother and sister, Roy and Grace, their half-sister and two half-brothers, the children of the second marriage, and their father. The title, therefore, after their death was held by all the children and their father in the following proportions: Grace and Roy, 9/28ths each, the three children of the second marriage, Fred, Cynthia and Lee, 2/28ths each, and Charles, the father, 4/28ths, all subject to the father's dower. The bill filed by Lee and Cynthia, (who is now Cynthia Holsen,) two of the children of the second marriage, against the two surviving children of the first marriage, Fred Fyffe, one of the children of the second marriage, and Charles, the father, seeks a partition of the premises in that proportion, an assignment of the dower interest of Charles, and an accounting of all the oil and gas that have been produced and sold from the premises, the royalties from which have been received by Charles, Roy and Grace, who has been married and is now Grace Denison. Upon a hearing the court entered a decree granting the relief prayed by the bill, ordering the assignment of dower to Charles, a division and partition of the remainder among the parties according to the interests which have been stated, and an accounting as to the royalties received under the lease. The defendants Roy Fyffe and

Grace Denison have appealed. The lessee, the International Oil and Gas Company, was also made a party but has not appealed.

The only defense to the bill is the Statute of Limitations, and the appellees argue that the statute is not sufficiently pleaded in the defendants' answer. They contend that the answer merely recites a history which is practically parallel to the allegations in the bill of complaint and a mere recital of facts and circumstances without claiming the benefit of any particular statute of limitations; that the particular statute upon which the defendants seek to base their defense must be definitely identified, pleaded and set out and the benefit of the statute claimed before it will operate.

No rule of practice is more firmly adhered to than that which requires that the Statute of Limitations, to be availed of as a defense, must be set up and relied on by the pleadings; and this is true both at law and in equity. (*Borders* v. *Murphy,* 78 Ill. 81.) It is not necessary that the plea should make express reference to the statute. The court will take judicial notice of it. (*Harpending* v. *Reformed Dutch Church,* 16 Pet. 455.) Nor is it necessary, in terms, to refer to the statute which creates the bar, but it will be sufficient for the defendant to state the necessary facts to bring the case within the operation of the statute and then insist that by reason of the existence of those facts the complainant's rights or remedies are at an end. (1 Beach on Modern Equity Practice, sec. 307; *VanHook* v. *Whitlock,* 7 Paige, 373.) The defense of the Statute of Limitations may be set up by answer, and when so interposed it has the effect of a plea. *Pierce* v. *McClellan,* 93 Ill. 245; *VanHook* v. *Whitlock, supra.*

The appellants' answer alleged that at the time of the death of their mother they went into possession of all the real estate in question and have ever since been in the peaceable, open and adverse possession, claiming to own the land

as tenants in common, have paid all the taxes and special assessments levied against them, and their title has never been questioned or disputed until about the time of the filing of the bill; that the complainants were raised in the home of the defendants and lived near this land and were familiar with the claims of the defendants and acquiesced in them and never questioned any of the right, title and interest of the defendants; that more than ten years have elapsed since the complainants arrived at their legal majority, and that they well knew for more than twenty years that the defendants were claiming to be the owners and in possession of all of the premises, collecting the rents, issues and profits from them. These allegations were of no importance except to inform the complainants and bring to the attention of the court that the defendants were relying on their possession as a defense to the bill. The facts, if established by proof, bring the case, except for the disability of appellees, within section 1 of the chapter of the statute on limitations, which prohibits the commencing of an action for the recovery of lands unless begun within twenty years after the right to bring such action first accrued, and section 9 of the same chapter, which provides that if at the time such right of action first accrued the person entitled to such action is a minor or insane, imprisoned, or absent from the United States in the service of the United States or of this State, such person may bring the action within two years after such disability is removed. The facts showing that the action was not brought within the time fixed by the Statute of Limitations for bringing it, constitute a sufficient pleading of the statute to entitle the defendant to the benefit of its provisions, though the pleading may not have specified expressly the section of the act creating the limitation. The court takes judicial notice of the statute, and if the facts appear in the bill its benefit may be claimed by demurrer, and if they do not appear in the bill the benefit may be claimed by alleging those facts.

Upon the death of the appellants' mother, they, together with their sisters, inherited the land, and they were in possession of it, as owners of the fee, in common. Upon the death of their two sisters their half interest was inherited by the appellants, the appellees, their father and Fred Fyffe, as tenants in common, and all were equally in possession. This condition continued until after the drilling of the first well, in 1906 or 1907. The production of oil and gas began in one of those years, and the royalties which then began to be paid under the lease were received by the father and were divided by him equally between himself and the two children of his first marriage, in the belief that such distribution was in accordance with their ownership of the property, he having a right of dower in the whole of it and the two children having the entire interest in the property, subject to his dower, by inheritance from their mother and their two sisters who had died. About 1911 the family moved from the home place, which was about a mile and a half from the premises in question, to Lukins township, about twenty miles from the tract involved in this suit. The development of the land continued. Twenty-two wells were drilled upon the tract and the most of them are yet in operation. About the only knowledge any of the children had of the place was that it was being operated for oil and that checks and royalties were received periodically and divided among their father and the two older children. In 1931, in a casual conversation with a neighbor, Lee was told that the neighbor had inherited from a half-brother. He consulted a lawyer, who told him that half-brothers inherited the same as full brothers. He talked to his father about it, and his father told him to go and see Roy and Grace. He went to see them and told them what he had learned and wanted them to go with him to see the lawyer, but they refused to do so. Thereupon Lee and Cynthia on August 18, 1931, filed this bill against the father, their half-brother and half-sister, their brother of

the full blood and others not involved in this appeal. Fred was defaulted.

The appellees were seven and nine years old, respectively, in 1907, and Grace was twenty and Roy sixteen. There was no concealment about the receipt of the royalties, the manner in which they were disposed of or the proportions in which they were divided. Charles was guardian of Roy, and when Roy reached his majority a new division order was made. After that the checks were drawn one to each of the three. Charles would frequently get the checks and deposit them in the bank and would show the deposit slips to Grace and Roy. The appellants testified that the three younger children were present at some of these times. The father testified that the other three children knew all about the division. The appellees testified that they knew that wells had been drilled on the land and were producing oil and that the appellants had some money but that the appellees did not know where they got it. It is a fair inference from all the testimony that the appellees understood that the appellants and their father were receiving and dividing all the proceeds derived from the land in question as their own and were claiming to be the owners of the land, but neither the appellees nor their father nor the two older children had any knowledge of the actual condition of the title or that the appellees owned any interest in the land. If the appellees had been adults or had been strangers to their father and the appellants the course of conduct in regard to the land and its royalties pursued by the latter would have constituted an ouster of the appellees. The appellants, the appellees and their father were in possession of the land under a common title, as tenants in common. The only occupation of the land was by the father for farming. That occupation was under his title to 4/28ths of the land in common and was the equal possession of all the co-tenants. His lease, with Grace, to Wise did not change the relation. It is presumed to have

been made for the benefit of all the co-tenants. The actual possession of the land by the lessee was not adverse to any of the co-tenants but was subservient to their title, and the intent of the father, if it existed, to hold adversely and disseize his co-tenants is of no consequence. The mere intention of a tenant in common to oust his co-tenant cannot have that effect, but only a clear, positive and unequivocal act manifesting a claim of exclusive right brought home to the knowledge of the co-tenants will be sufficient for that purpose.

There are many instances in which the relation of the parties is such that adverse possession of land of one can not be predicated on the possession by the other party, as the relation of parent and child, husband and wife, guardian and ward, trustee and *cestui que trust,* principal and agent, landlord and tenant, and generally all the great variety of cases in which a fiduciary relation exists. In none of these cases where the possession has been consistent with the title of the real owner can the possession by the parent, husband, guardian, trustee, agent, tenant or party to any relation of a fiduciary character be regarded as adverse to the right of the other party so as to start the running of the Statute of Limitations until the latter has had notice, by some clear, certain and unequivocal act of the one in possession, of his disclaimer and disavowal of the title of such owner. Even such notice and disclaimer will not be sufficient to render the possession of the parents adverse in the case of minor children living in the family and under the guardianship or tutelage of the parent. The question whether a fiduciary relation exists between a parent and an adult son or daughter who has reached the age of majority may be a question of fact, and so may the question which one, if either, dominates the other, but the general rule is that during minority the parent is the dominating character, the relation between them is governed by the rules applicable to the fiduciary relation, and the parent

can acquire no adverse interest in the property of the child. It is the same rule which applies to the relation of trustee and *cestui que trust.* The bill in this case was filed on August 18, 1931. The appellees were born, Cynthia on June 4, 1898, and Lee on February 3, 1900. Cynthia was eighteen years old on June 4, 1916, and Lee twenty-one on February 3, 1921. Applying the rule in this case, therefore, we find that the statute began to run against each of the appellees upon the attainment of his or her majority, and had run against Cynthia only a few weeks over fifteen years and against Lee a few days over ten and a half years when the bill was filed. These periods were insufficient to bar the appellees' rights.

The decree is affirmed.

*Decree affirmed.*