CHARLES BALLANCE, plaintiff in error, *v.* ISAAC UNDERHILL *et al.*, defendants in error.

*Error to Peoria.*

The presumption is, that a public officer, in the discharge of his official duties, has pursued the course pointed out by the statute, till the contrary is shown.

Where a certificate of an officer, taking depositions in chancery, states that the witnesses were sworn to testify the truth, the whole truth, and nothing but the truth, and the depositions are signed, it is sufficient, although the certificate does not state when the oath was taken, nor that the depositions were subscribed by the deponents.

Where a submission to arbitrators was made of all matters in controversy between the parties, and at the hearing, one of the parties proposed to read in evidence the bill and depositions in a certain chancery suit pending between the parties, wherein he was complainant, to which the other party objected, unless the answer should also be read, and the arbitrators decided that if the former were read, the latter must also be, and the complainant then abandoned his proposition: *Held,* that he thereby withdrew the chancery suit from the decision of the arbitrators

The general rule is, that the arbitrators must decide all matters submitted to them; and if, by the submission, several specific things are submitted to them, and any of them are omitted in the award, it is void. But this rule is now subject to many limitations. It is now well settled, that where all matters of difference are submitted generally, and an award of part only is made, the award shall stand, because the court will infer that no more was made known to the arbitrators. So, if in the presence of the arbitrators, or at any time between the submission and the hearing, the parties should agree to withdraw from their consideration a part of the matters specified in the submission, and an award be made omitting the matters thus withdrawn, the award would be valid.

A party has an unquestionable right to call upon a court of equity to compel a specific performance of an award; but in doing so, he, in effect, treats the award as a contract between the parties to it. An award of arbitrators partakes, in some respect, of the nature of the judgment of a court, which the parties have, by their own voluntary agreement, vested with a final jurisdiction of the subject matter of the submission. In other respects it partakes of the nature of a contract between the parties, which they have, by their submission, authorized the arbitrators to make for them, and by which they are conclusively bound. It is in this latter character alone that an award is treated when courts of equity have interfered, and undertaken to enforce a specific performance of it.

Courts of chancery have uniformly exercised the power of correcting mistakes, not only in simple contracts, but in bonds, deeds, and other specialties, whether the application is made to the court merely for the purpose of rectifying the mistake, so that the parties may assert their legal rights under the agreement, when corrected, or whether the application is made for the double purpose of rectifying the mistake, and then enforcing a specific performance of the agreement, but also where the complainant seeks a specific performance of a contract, in which a mistake has occurred, and the defendant sets up the mistake by way of defence.

Wherever it is necessary to bring all the equities of all the parties fully before the court, that complete equity may be done, as well in favor of the defendant as of the complainant, it becomes necessary to file a cross-bill: and this may be done by all or any of the defendants, against all or any of the complainants, or by a part of the defendants against the complainants, or a part of them, and also against his co-defendants, or a part of them, as the nature of his case may require.

Where the defendants rely on the answer alone, they can only use the equity of their case for the purpose of defence; but if they wish to become the assailants, and seek affirmative relief, they must file their cross-bill, and in this way, and in this alone, are they permitted to use their equity, as a weapon of attack.

The twelfth section of our chancery act has superseded the necessity of filing a cross-bill, where the sole object is to compel a discovery from the complainants; but where the defendants seek relief against the complainants, the practice is left unaltered, and the defendants must still resort to their cross-bill.

So far as the practice and proceedings are concerned, there is no difference between a cross and original bill. It is, in fact, a separate and distinctive suit, commenced by filing the bill, which, it is true, must be confined to the subject matter of the original suit; to answer which the defendant in the cross-bill must be brought into court in the same manner as he would be in any other case.

Ballance *v.* Underhill *et al.*

Where an award of arbitrators required one party to convey to the other, lots "one and two," in a certain town, and it appeared that the arbitrators, by mistake, omitted the words, "in block fifty-one," after the word two, in drawing up their award: *Held,* that the mistake could be corrected in a court of chancery.

THIS cause was heard in the Court below, at the October term, 1841, before the Hon. Thomas Ford. All the facts necessary to be stated in this case, appear in the opinion of the Court, except that the certificate of the clerk, before whom Ewalt and Parker's depositions were taken, did not certify, as the plaintiff in error contended it should, that "previous to the examination" of said witnesses, they were "sworn (or affirmed) by the person or persons authorized to take the same, to testify the truth in relation to the matter in controversy, so far as they might be interrogated;" nor that the depositions were "sworn to and subscribed by the deponents." The clerk certified that the witnesses were sworn to speak the truth, the whole truth, and nothing but the truth, in the matter in controversy; but it did not appear when the oath was administered; and their names were subscribed to the depositions.

CHARLES BALLANCE, *pro se,* relied upon the following points and authorities:

1. The complainant objects to the depositions of Ewalt and Parker, because it does not appear by the certificate that they were sworn to the depositions according to law, nor that they had signed them.

2. The submission is alleged to be void, because of unfair practices of the defendants. Anderson's Ex'rs. *v.* Bacon *et ux.,* 1 Marsh. 51.

3. The award itself is void, because the arbitrators did not decide on all matters submitted to them; it being alleged by the bill, and not denied by the answers, that there was another suit pertaining to the matter in controversy, not decided. Watson on Arb. 115, and the authorities there cited, especially 7 East 81.

4. The defendants, having failed on their part, were entitled to no decree; the absence of Underhill, as alleged in his answer, being no excuse.

5. The Court erred in dissolving the injunction; for, at all events, the defendants should be enjoined from prosecuting more than one suit for the same land.

6. It was error to decree the award to be amended; for, besides the impropriety of permitting the arbitrators to amend their award, the evidence in the case did not justify it.

7. By the rules of chancery practice, these defendants had no right to any decree but that the bill be dismissed. That is their first prayer; but they afterwards pray that the award be amended and enforced. They should have filed cross-bills.

G. T. METCALF, for the defendants in error:

1. The officer is not required by the statute to certify that the depositions were sworn to before signing. Gale's Stat. 245, § 3.

2. A court of equity will correct a mistake of an extra-judicial nature, in an award of arbitrators, and decree a performance in specie. Bouck *et al. v.* Wilber, 2 Johns. Ch. R. 405.

3. Courts of equity will grant relief, if the arbitrators are satisfied that they have made a mistake in fact, not apparent on the face of the award, and allow extrinsic evidence of the mistake. Klein *v.* Catara, 2 Gallis. 61; 2 Story's Eq. 679, and the cases there cited; 2 Vern. 24.

4. Parol proof, to correct a mistake in a written contract, is admissible, as well in favor of a plaintiff as a defendant. Keisselbach *v.* Livingston, 4 Johns. Ch. R. 145; Gillespie *v.* Moon, 2 Johns. Ch. R. 598.

5. An award may be good, though made of less than is contained in the submission. Watson on Arb. 117.

CATON, Justice, delivered the opinion of the Court:

This was a suit in *chancery*, commenced by Ballance against Underhill, and the heirs at law of Lewis Bigelow, deceased, in the Peoria Circuit Court. From the pleadings, exhibits, and proofs in the case, we find the following facts to be established, which are all that it is deemed necessary to state to a full understanding of the case:

In November, 1837, the complainant, Underhill, and Bigelow appeared before the land officers at Quincy, for the purpose of establishing their respective rights to a preëmption to the S. E. fractional quarter of section nine [9], in township eight [8] north, in range eight [8] east of the 4th principal meridian. The complainant claimed to enter the fraction either in his own name, or in the name of Abigail Waters, for his use; and Underhill and Bigelow claimed to enter the same fraction in the name of John L. Bogardus, for their use. After the case had been submitted, on both sides, to the land officers, and while they were deliberating upon it, the parties agreed, under seal, to submit their controversy, and all suits then pending concerning it, to the arbitrament of Dan Stone, John Ewalt, and George B. Parker. By this agreement, Ballance was to withdraw his papers and objections to the Bogardus preëmption. Each party agreed to perform the award, and if any of the land should be awarded to Ballance, Underhill and Bigelow agreed to convey the same to Ballance, by deed, warranting against themselves, their heirs, and assigns. After this agreement was entered into, the Bogardus claim was allowed, and the fraction entered by Underhill and Bigelow. Among other things, the complainant seeks to set aside the award made under this submission, on the ground of alleged unfair practices of Underhill and Bigelow in obtaining the submission; and with this view has spread upon the record a minute history of a long and acrimonious controversy between the par-

ties, but as we are satisfied, from a careful examination of the whole proceedings, not the least foundation is laid for disturbing this award, on that ground, it is deemed unnecessary to encumber the case any further with it. Sometime after this entry, Underhill and Bigelow laid off this fraction, together with some other land adjoining, into town lots, and called it their addition to the town of Peoria; and on this fraction, it appears that there are lots one [1] and two [2], in block fifty-one [51], and lots numbered one [1] and two [2], in five other blocks.

On the 8th of February, 1838, the arbitrators met, and all the parties appeared, when all the matters mentioned in the agreement were submitted to them, except one suit in chancery. After all the parties were through with their case, the arbitrators, on the 10th of February, 1838, executed and delivered their award, under their hands and seals, whereby they awarded,

1st. That Underhill and Bigelow should, within thirty days, deed to Ballance, lots number one [1] and two [2], as described and recorded on Underhill and Bigelow's addition to the town of Peoria, being a part of said faction;

2d. That Ballance should, within thirty days, quit claim to Underhill and Bigelow all of said fraction, except said lots one [1] and two [2], and except such as Ballance had before sold;

3d. That Ballance should pay or deliver over to the other parties, all moneys, notes, property, &c., which he had received for or on account of said sales;

4th. That Ballance should, within sixty days, dismiss a trespass suit, and pay to Underhill and Bigelow the costs of a forcible entry and detainer suit mentioned in the submission, on their dismissing it;

5th. That Ballance should give to Underhill and Bigelow possession of the fraction, except said lots one [1] and two [2].

No notice was taken in the award of the chancery suit.

It is set up in all of the answers, and fully sustained by the evidence of Parker and Ewalt, two of the arbitrators, that the decision of the arbitrators actually was, that Underhill and Bigelow should only deed to Ballance lots one [1] and two [2], in block fifty-one [51], on said fraction, and not lots one [1] and two [2] in each of the blocks on the fraction, and that in said award the words, "in block fifty-one," should have been inserted after the words, "one and two," and that these words were left out, through accident or mistake, in drawing up the award; and that the arbitrators, directly after the delivery of the award, so informed the parties.

About the 1st of March, 1838, Ballance tendered to the other parties a quit claim deed for the fraction, except lots one [1] and two [2] in each of the blocks, and excepting some other small portions of the fraction.

About the same time, Bigelow and Underhill tendered to Ballance a deed for lots one [1] and two [2], in block fifty-one [51], on the fraction.

Before the hearing of the cause in the Court below, Ballance filed exceptions to the depositions of Ewalt and Parker, which were overruled by the Court, and the depositions read.

The prayer of the bill was, that several ejectment suits commenced by Underhill and Bigelow, to recover possession of the premises, might be enjoined; that they should convey to the complainant the legal title to the fraction; and that the award might be set aside.

Most of the defendants put in separate answers, but there is no essential difference between them. In addition to the usual prayer that the bill be dismissed with costs, they all asked for specific relief against Ballance; that he perform his part of the award; and Frisby, one of the heirs and administrators of Bigelow, in the conclusion to his answer, prays that his "answer may be taken and treated as a cross-bill." Upon the hearing of the cause, the Court below decided that the defendants deed to complainants said lots one [1] and two [2], in block fifty-one [51], in four months; that the complainant, within the like time, quit-claim to the defendants, all of said fraction, except said two lots; that the defendants dismiss their forcible entry and detainer suit, and that complainant pay to Underhill the costs thereof; that complainant give possession of the fraction to defendants, except said two lots; that an injunction previously issued be dissolved, and that complainant pay the costs.

The first objection taken is, that the Court erred in allowing the depositions of Ewalt and Parker to be read; but in this, I think, the Court decreed properly. It is objected that the oaths administered to the witnesses were more comprehensive than were required by the statute, but as the major must necessarily include the minor, the objection cannot prevail; nor does it appear that the oath was not administered at the proper time; but we are bound to presume that it was; the presumption being that a public officer, in the discharge of his official duties, has pursued the course pointed out by the statute, till the contrary is shown.

The next enquiry to which our attention is directed, is, whether there are sufficient grounds shown for disturbing the award.

It has been already said, that nothing is perceived in the circumstances which induced the complainant to enter into the submission, which can authorize us to go behind it, so that the first objection fails. The next objection is, that the arbitrators did not decide a certain chancery suit mentioned in the submission. The complainant states in his bill, that the arbitrators refused positively to adjudicate upon, or take any notice of the said suit in chancery. The only evidence that I can find on this point, is contained in the answer of Frisby, in reply to this portion of the bill. The answer states that the complainant did not propose to submit the case dis-

tinctly to said arbitrators, but he proposed to read as a part of his evidence, to show his right to the land, his bill and a deposition taken by him in the cause. This was objected to, unless the answer was read also; that the arbitrators so decided, when the complainant abandoned his intention.

The law in relation to awards was formerly very strict, and the courts leaned very hard against them; but they have for a long time been in the habit of looking with a more indulgent eye upon this amicable mode of settling controversies, and have manifested less disposition to disturb awards, upon technical or trivial grounds; and I think these principles better comport with sound policy.

The general rule is, that the arbitrators must decide all matters submitted to them; and if, by the submission, several specific things are submitted to them, and any of them are omitted in the award, it is void. (1) But this rule is now subject to many limitations. It is now well settled, that where all matters of difference are submitted generally, and an award of part only is made, the award shall stand, because the court will infer that no more was made known to the arbitrators. (2) So, if, in the presence of the arbitrators, or at any other time between the submission and the hearing, the parties should agree to withdraw from their consideration a part of the matters specified in the submission, and an award be made omitting the matters thus withdrawn, it will not be contended that, for this reason, the award would be bad; and we think it would be a rule, without a reason, to require the arbitrators to decide a controversy of which they know nothing, and of which both parties have neglected to inform them. Here Ballance proposed to read the bill and one of the depositions in the case. This was objected to, unless the answer was also read, and so the arbitrators decided; when the complainant declined reading the papers altogether, and as he was the complainant in that case, the other parties did not present it to the arbitrators; and now he comes here, and asks that the award may be set aside, because the arbitrators omitted to dispose of that suit. I think that his conduct on that occasion was equivalent to withdrawing that suit from the consideration of the arbitrators, and he cannot complain that they did not decide it. He may have had substantial reasons for wishing that the arbitrators should not decide that suit, and preferred to pursue his remedy in the forum where it was then pending. Had he desired a decision in that case, he would not have refused to put the arbitrators in possession of all the pleadings and papers properly pertaining to the case; and if that had been done, and they had refused to decide it, he might well have objected to the validity of the award. I am therefore of opinion that the award must stand.

As has been already stated, it appears satisfactorily, that the arbitrators, in drawing up their award, made a mistake, giving to

(1) Watson on Arb. 115.          (2) Watson on Arb. 117.

Ballance *v.* Underhill *et al.*

the complainant twelve lots instead of two, and the question now is, whether the defendants can show this fact in their defence, as proposed in their answers. In order to determine this question it is necessary to understand the nature and objects of this suit. The complainant has instituted this proceeding for the purpose, among other things, of enforcing a specific performance of this award ; and in determining this, are we not permitted to enquire what the award really was ?

A party has an unquestionable right to call upon a court of equity to compel a specific performance of an award, but in doing so, he, in effect, treats the award as a contract between the parties to it. An award of arbitrators partakes in some respects of the nature of the judgment of a court which the parties have, by their own voluntary agreement, vested with a final jurisdiction of the subject matter of the submission. In other respects, it partakes of the nature of a contract between the parties, which they have, by their submission, authorized the arbitrators to make for them, and by which they are conclusively bound. It is in this latter character alone that an award is treated, when courts of equity have interfered and undertaken to enforce a specific performance of it. It then becomes necessary to see by what rules the court should be governed, if this bill had been filed to enforce a specific performance of a voluntary contract entered into between the parties directly, in which the mistake had occurred.

It is perhaps hardly necessary to cite authorities to prove that courts of chancery have uniformly exercised the power of correcting mistakes, not only in simple contracts, but in bonds, deeds, and other specialties, whether the application is made to the court merely for the purpose of rectifying the mistakes, so that the parties may assert their legal rights under the agreement, when corrected ; or whether the application is made for the double purpose of rectifying the mistakes, and then enforcing a specific performance of the agreement; but also where the complainant seeks a specific performance of a contract, in which a mistake has occurred, and the defendant sets up the mistake by way of defence.

In the case of Gillespie *v.* Moon. (1) which was a case where a bill was filed for the purpose of rectifying a mistake in a deed, Chancellor Kent says, " I have looked into most, if not all of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing, founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the matter affirmatively by bill, or as a defence." And in a subsequent part of the same case, he further adds, " On a bill for a specific performance of an agreement in writing, the defendant has been

(1) 2 Johns. Ch. R. 296.

Ballance *v.* Underhill *et al.*

frequently permitted to show, by parol proof, a mistake in such agreement, and by that means to defeat the equity of the bill.

In the case of Kisselbrock *v.* Livingston, (1) which was a bill filed for the specific performance of an agreement, also averring a mistake, in commenting on this branch of the case, Chancellor Kent says, " It can make no difference in the reasonableness and justice of the thing, whether the mistake was to the prejudice of one party, or the other. If the Court has competent jurisdiction to correct such mistakes, (and that is a point understood and settled) the agreement, when corrected and made to speak the real sense of the parties, ought to be enforced as well as any other agreement, perfect in the first instance. Indeed, by looking into the cases on this subject, (and they are very abundant) it will be seen that the authority of the Court to rectify a mistake in an agreement, and then enforce a specific performance of it in the same suit, was questioned long after it was settled, beyond controversy, · that a mistake might be set up to defeat the equity of the bill."

But we are not confined to cases arising under voluntary contracts entered into between the parties themselves directly. The case of Bouck *v.* Wilber, (2) was brought to enforce the specific performance of an award. The parties to the award, submitted an ejectment suit to arbitrators, and they awarded that the plaintiff should deed to the defendant a certain tract of land, and that the defendant should pay him $406 ; but in drawing up the award, the arbitrators made a mistake in the description of the land. The plaintiff brought a suit at law on the award to recover the money, and the defendant successfully set up the mistake as a defence. A bill was filed stating these facts, and praying a specific performance of the award ; and the Court rectified the mistake in the award, according to the intention of the arbitrators, and decreed that the defendant should pay the money.

It necessarily results from the principles here laid down, that it was perfectly competent for the defendants in this case, to set up in their defence, and establish by parol proof, as has been done, the mistake of the arbitrators in drawing up their award, and thereby resist any relief in favor of the complainant, except such as he would be entitled to under the award, had it been drawn up and executed according to the real intention of the arbitrators. And now has the complainant shown himself entitled to any relief? I think most undoubtedly he has not. He has failed on his part, in almost every essential particular, to comply with the award, and has refused to accept, when tendered to him, the only deed which he had a right to expect under this award.

On the final hearing of this cause, the Court below, among other things, decreed that the complainant should execute to the defendant, within sixty days, a quit-claim deed to said fraction, except

(1) 4 Johns. Ch. R. 145.                    (2) 4 Johns. Ch. R. 405.

said two lots, and this portion of the decree is one of the errors assigned. In order to come to a correct understanding of this branch of the case, it is necessary to ascertain what was really the case presented to the Court for its adjudication. The complainant filed his bill and prayed for specific relief. The defendants filed their answers, and for the purpose of defeating the relief sought by the bill, set up a state of facts, not only sufficient to defeat the relief sought by the bill, but sufficient, if properly presented for that purpose, to entitle them to affirmative and positive relief against the complainant. Now the enquiry is, in what way must the defendants present their case to the Court, to obtain the relief to which they are in equity entitled?

In the case of German *v.* Machin, (1) Chancellor Walworth says, " The defendant must unquestionably proceed by cross-bill, if in addition to the denial of a decree for partition, and a dismissal of the bill, he seeks full and affirmative relief on his part, by a decree for a transfer to him of the legal title to the whole premises, or, if a discovery is necessary, to establish his equitable defence." Wherever it is necessary to bring all of the equities of all of the parties fully before the Court, that complete equity may be done, as well in favor of the defendant as of the complainant, it becomes necessary to file a cross-bill; and this may be done by all or any of the defendants, against all or any of the complainants, or by a part of the defendants against the complainants, or a part of them, and also against his co-defendants, or a part of them, as the nature of the case may require. (2) Where the defendants rely on their answers alone, they can only use the equity of their case for the purposes of defence, but if they wish to become the assailants, and seek affirmative relief, they must file their cross-bill, and in this way, and in this alone, are they permitted to use their equity as a weapon of attack.

Thus we see, that while the defendants stand alone in an attitude of defence, by relying alone on their answers to present their case to the Court, all they can ask and expect is, that the relief sought by the complainant shall be denied, and his bill dismissed. Was this the situation of the case before the Court? It was unquestionably, unless the clause in Frisby's answer, that his answer might be taken and considered in the nature of a cross-bill, constituted it a cross-bill. To ascertain this, it is necessary to look into the practice of courts of chancery in cases of cross-bills. The twelfth section of our chancery act has superseded the necessity of filing a cross-bill, where the sole object is to compel a discovery from the complainants, but where the defendants seek relief against the complainant, the practice is left unaltered, and the defendants must still resort to their cross-bill. So far as the practice and proceedings are concerned, there is no difference between

(1) 6 Paige 290.          (2) 1 Smith's Chan. Prac. 459; Mitf. Plead. 75.

a cross and an original bill. It is, in fact, a separate and distinctive suit, commenced by filing the bill, which, it is true, must be confined to the subject matter of the original suit, to answer which, the defendant in the cross-bill must be brought into court in the same manner as he would be in any other case. It is docketed as an independent suit, and the same rules are taken to compel an answer, or to take the bill as confessed, as in other cases, and in every stage of the proceedings, till the final hearing, it maintains its individuality. (1) Although both cases are considered so united that the complainant in the original cause shall not bring his cause to a hearing, till the cross cause is also ready, when both causes shall be heard together. But to secure this, the complainant in the cross-bill must not be guilty of neglect. (2)

This short review of the practice in relation to cross-bills, is sufficient to show that Frisby's answer did not, nor could it, become a cross-bill, by his simply requesting that it might be so treated. It has none of the features of a bill in chancery, nor was it ever afterwards treated as such, by any of the parties. This being the case, then, it must be apparent to all, that the defendants' equity was not presented to the Court below, in such a manner as to enable it to grant to the defendant affirmative and positive relief against the complainant.

Several other errors have been assigned, but none of them are deemed of sufficient importance to require particular investigation. I am of opinion that that portion of the decree which dissolves the injunction, and adjudges the complainant to pay the costs be affirmed, and that all other parts of said decree be reversed, and that said bill be dismissed, with the costs of this Court to be paid by the said defendants.

*Judgment reversed.*

(1) 1 Smith's Chan. Pract. 560; Mitf. Plead. 76–7.
(2) 1 Smith's Chan. Pract. 468.