## Charles D. Babcock, Administrator, Defendant in Error, v. John V. Farwell et al., Plaintiffs in Error.

### Gen. No. 19,580.

1. EQUITY, § 345*—*when bill must be dismissed for want of equity.* Where the proofs fail to sustain a bill filed in a court of equity, no other course is open to the chancellor but to dismiss the bill for want of equity.

2. EQUITY, § 482*—*when decree unauthorized after adverse finding as to jurisdictional facts.* On a bill filed by a stockholder against a corporation and representatives of a copartnership to enforce the right of the corporation as against said representatives, on the sole ground that there was fraud and collusion on the part of the corporation and the copartnership in a certain transaction, *held* that upon a finding by the chancellor that the complainant failed to prove the alleged fraud and collusion, a decree was not authorized on such parts of the bill as standing alone would not give the court jurisdiction.

3. EQUITY, § 493*—*necessity of cross-bill for affirmative relief as between codefendants.* A decree granting affirmative relief to a defendant against his codefendant, not based on or supported by a cross-bill or answer in the nature of a cross-bill, cannot be sustained.

Error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded with directions. Opinion filed October 13, 1914. Rehearing denied October 27, 1914.

·HORACE KENT TENNEY and GEORGE T. ROGERS, for plaintiffs in error.

EVERETT L. MILLARD, for minor plaintiffs in error and for certain others; HORACE KENT TENNEY and GEORGE T. ROGERS, of counsel.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Munroe & Noyes, for the Capitol Company; M. Paul Noyes, of counsel.

Kraus, Alschuler & Holden, for defendant in error.

Mr. Justice Baker delivered the opinion of the court.

The bill in this case was filed August 12, 1909, in the Circuit Court, while an appeal from the decree of the Superior Court dismissing a similar bill was pending in the Supreme Court on an appeal from this court. Both suits are stockholders' suits brought by complainant Babcock as the holder of shares of the Capitol Freehold Land and Investment Company, Limited, an English corporation, against the corporation, the executors of the will of John V. Farwell, the surviving executors of the will of Charles B. Farwell and the devisees and legatees under his will, to enforce the right of the corporation, called in the briefs the Company, against the other defendants as the representatives of a copartnership, called in the briefs the Syndicate. The original members of the Syndicate were John V. Farwell, Charles B. Farwell and Abner Taylor. Taylor transferred all his interest in the copartnership to John V. and Charles B. Farwell, who assumed all his obligations on the contracts of the copartnership. Charles B. Farwell died in 1903, and John V. Farwell died August 20, 1908. The rights of the Company, which complainant sought by her bill to have enforced, grew out of a contract between the Company and the Syndicate dated July 12, 1894. The transactions between the parties both before and after the making of the contract are set out in detail in *Babcock v. Farwell,* 146 Ill. App. 307, and in the same case on appeal, 245 Ill. 14. The Company was the owner of three millions of acres of land in Texas, for which it had built a State House for the State of

Texas. The Syndicate, under previous arrangements with the Company, was at the date of the contract in possession of the land and of a herd of cattle thereon, and the contract among other things provided that the Syndicate should at the end of fifteen years from January 1, 1893, return to the Company 120,000 head of cattle of the same grade, age, breeding and condition as those that were on the land January 1, 1893. There was also a provision as to the Company sharing in extraordinary losses and another for the payment for improvements made by the Syndicate on the land. The Company alone had power to sell the lands of the Company, and the Company, by resolution of its board of directors declared that the Syndicate should have from the Company an equitable adjustment of the losses it might sustain by being deprived of the use of the lands sold. The Syndicate improved the grade and value of the herd by buying and using Angus and Hereford bulls at a cost of more than $300,000 and claimed that the personal representatives of the Farwells were entitled to an allowance based on the difference in value between the long-horned cattle received in 1893 and the grade cattle returned to the Company January 1, 1908. There was also a disagreement as to the price to be paid for improvements, the amount the Company should allow for extraordinary losses, and the allowance to be made on the losses sustained by the Syndicate from the sale of lands by the Company. The claims of the Syndicate against the Company and of the Company against the Syndicate amount in the aggregate to hundreds of thousands of dollars. January 1, 1908, at the close of the fifteen years term, John V. Farwell, the surviving member of the Syndicate, delivered the ranches and cattle to the Company under an arrangement that such delivery by him and acceptance by the Company should be without prejudice to the right of either as against the other. The Company filed September 21,

1909, a bill in the United States District Court for the Northern District of Illinois against the executors of the will of John V. Farwell, for an accounting of the rights of the parties under the contract under which the Company might have a decree against the Syndicate or the Syndicate a decree against the Company.

It is not contended by complainant that any act of the directors of the Company was illegal or *ultra vires*. The only other ground on which complainant could maintain a bill against the Company in behalf of herself and other stockholders to enforce the claims of the Company against the Syndicate, is that the Company refused to bring an action against the Syndicate and that such refusal was a fraudulent perversion of their power, and not the exercise of the discretion vested in them to determine whether they would or would not bring an action to enforce a supposed claim of the corporation. The chancellor found by the decree:

"That all charges of fraud and collusion between the Syndicate and the representatives or agents of the Syndicate on one side and the directors of the Company on the other side, and all charges of control and domination by the Syndicate and the personal representatives of Charles B. Farwell, deceased, and of John V. Farwell, deceased, of the Company and its acting directors are untrue. * * * That no fraud, actual or constructive, and no collusion or over-reaching, and no substantial mistake of fact in regard to the rights of the parties which it would be fraudulent on the part of the directors not to correct, is proven, and that all concluded transactions between the Syndicate and the Company have been fairly and honestly conducted and must stand and be held to be final."

When the proofs fail to sustain the bill no course is open to the chancellor but to dismiss the bill for want of equity. *Leahy v. Nolan,* 261 Ill. 219.

The chancellor in place of dismissing the bill proceeded to adjudicate the right of the Company as

against the executors of John V. Farwell, and as .a basis of such adjudication made certain findings of fact against the complainant in favor of all the defendants and certain other findings in favor of the Company and against the executors of John V. Farwell.

We concur in the findings of fact of the chancellor against the complainant above stated, but not in his conclusion to retain the bill for the purpose of adjudicating the respective rights of the Company and of the executors of John V. Farwell as against each other. The decree refers the case to a master to take and state an account between the Company and Farwell's executors and contains a large number of findings and directions, which we do not deem it necessary, in view of the conclusion reached by us, to state in detail. One of the findings is that the Syndicate were not entitled to have allowed them as against the Company the increased value, if any, on January 1, 1908, of the cattle then returned to the Company over the value on January 1, 1908, of cattle of the age, grade, breeding and condition of the cattle on the ranches January 1, 1893. The decree contains other findings which amount to adjudications of controverted questions between the Company and the Syndicate.

The decree against Farwell's executors in favor of the Company, their codefendant, is not based on or supported by a cross-bill or answer in the nature of a cross-bill of the Company to either the amended or supplemental bill. The answer of the Company to the amended bill concludes as follows:

"And this defendant says, by the advice of its counsel, that said bill as amended does not, nor does it in connection with said complainant's supplemental bill, show any right in said complainant to sue for or in or upon the right of this defendant, as respects any of the matters complained of by said complainant; that said complainant made no proper or reasonable demand upon this defendant to bring suit for any of said mat-

ters, and shows by her pleadings no reason why she should be permitted to assert in her own name causes of action which both at law and in equity reside in this defendant.

And this defendant having fully answered said bill as amended, prays to be hence dismissed with its costs, and that said bill as amended be dismissed at said complainant's costs.''

The answer of the Company to the supplemental bill concludes with a prayer that the defendant be ''hence dismissed with its costs.'' No claim for relief against Farwell's executors is made or stated in the answer to either bill.

The effect of the decree is to give to the Company affirmative relief against its codefendants, the executors of John V. Farwell. This cannot be done under an answer. *Skahen v. Irving*, 206 Ill. 597. In *Mason v. McGirr*, 28 Ill. 322, Mr. Justice Walker said: ''The practice has been long and uniformly settled, and it must be regarded as the established practice of this court, that such relief can never be given, unless it be on bill or cross-bill praying relief. *Ballance v. Underhill*, 3 Scam. 453; *Edwards v. Helm*, 4 Scam. 142; *Tarleton v. Vietes*, 1 Gilm. 470; *Rowan v. Bowles*, 21 Ill. 17; *McConnel v. Smith*, 23 Ill. 611.'' In *Purdy v. Henslee*, 97 Ill. 389, it was held, and a large number of cases cited in support of the rule, that a court has no power to decree affirmative relief on an answer; that this can only be done on a bill or cross-bill. In the opinion Mr. Justice Scholfield said, p. 394:

''There was here no distinct statement of matters for a cross-bill, after the conclusion of the answer— no parties were required to answer a cross-bill, and no specific relief was prayed. So that, if this answer shall be held to be a cross-bill, no reason is perceived why every answer which, in addition to denying the right of the complainant, sets up some affirmative right in the defendant, shall not be held a cross-bill, thus overruling the long line of decisions to which we have referred.''

*Talbot v. McGee,* 4 T. B. Monroe (Ky.) 375, was a bill of McGee against Talbot, Logan and Burks, with an injunction against a judgment at law in favor of Burks, assignee of Logan, assignee of Talbot, against McGee, on the ground that McGee had paid $90 on the note to Talbot before it was assigned. The chancellor gave McGee an injunction as to $90 of the judgment and also gave to Logan a decree against his codefendant, Talbot, for the amount of the decree in favor of McGee, and to Burks a like decree against his codefendant, Logan. The Court of Appeals affirmed the decree in favor of McGee against Burks, but reversed the decree in favor of Logan against Talbot and that in favor of Burks against Logan. In the opinion Mr. Chief Justice Bibb said:

"But the decree over against Talbot, in favor of Logan, his codefendant, is not warranted by the proceedings; and so of the decree against Logan, in favor of Burks. There is no cross bill, nor process, nor ground work for a decree between the codefendants. This is not a question open; it is settled by former adjudications. In the case of *Morehead v. Prater and Smiley,* in 1809, 1 Bibb, 316, the question whether, as between codefendants, a decree could be made without a cross bill and process, was fully considered and decided by Chief Justice Edwards, and Judges Boyle and Wallace. The luminous discussion in the opinion of the court delivered by the Chief Justice, renders any other or farther explanation useless. In *Shelby and Roberts v. Smith's heirs and executor,* 2 Marsh. 514, the same question occurred, and was ruled according to the decision in *Morehead v. Prather and Smiley.* We do not mean that an answer which, after making a response to the original bill, proceeds to charge his codefendant, and to require him to answer, and to ask a decree, containing the substantials of a cross bill, may not authorize a decree over against such codefendants, if it be proceeded in as upon a cross bill, by process to answer, and regular proceedings. We do not mean any technical distinction between a cross bill and an answer in nature of a cross bill. We do not

mean there must be a paper called a cross bill, separate and distinct from the paper called the answer. But we mean that if one defendant uses his answer for greater convenience and brevity, to frame thereon a prayer for relief against a codefendant, he must take care that he engraft upon such answer the substantial parts of the bill, and proceed on it as in a suit instituted, and treat it as such.''

The allegations of the amended bill as to the rights and equities of the Company against the Syndicate, standing alone, would not authorize the chancellor to give relief either to the complainant or to the Company against the Syndicate. The complainant, to show herself entitled to relief, must prove the allegations of her bill as to fraud and collusion on the part of the Company and the Syndicate. She failed to make such proof and no relief was decreed to her, and such allegations in her bill will not authorize a decree on such parts of the bill as standing alone would not give the court jurisdiction. *Tarr v. Stearman*, 264 Ill. 110. In the case last cited it was also held that the defendant, the appellee, not having filed a cross-bill, no relief could be granted to him on his cross-errors, even if it be conceded that he is entitled to such relief.

It is not sufficient that one defendant in his answer to the bill states facts which constitute a defense to the bill and at the same time show a right in the defendant to relief against a codefendant. Two defendants may be willing to unite in making their defense against the complainant and unwilling in that suit to submit the controversy between themselves. In this case the Company might prefer to settle the controversies between it and Farwell's executors in the suit begun by the Company against the executors, in a suit which it controlled, rather than to have such controversies settled in this suit, which if it can be maintained will be managed and controlled by the complainant.

We see no reason why the controversies between

the Company and Farwell's executors should not be settled in the suit pending in the Federal Court, but if for any reason the chancellor proposed to adjudicate the controversies between the Company and Farwell's executors, he should have directed the Company to file a cross-bill against Farwell's executors so that they might have pleaded or answered such facts as they deemed necessary to their defense against the claims of the Company.

The decree of the Circuit Court is reversed and the cause remanded to that court with directions to dismiss the bill for want of equity.

*Reversed and remanded with directions.*