Lee Fyffe and Cynthia Holsen, Appellees, v. Charles Fyffe, et al., Appellees. International Oil & Gas Company, Appellant.

542

McGaughey & McGaughey, of Lawrenceville, and P. J. Kolb and Walter F. Kolb, of Mt. Carmel, for appellant.

Gee & Shaw, of Lawrenceville, for appellees.

Mr. Justice Murphy delivered the opinion of the court.

The land which furnishes the subject matter of this litigation consists of 38.71 acres located in Lawrence county and was owned by Ella Fyffe at the time of her death in 1893. She died intestate and left her surviving Charles Fyffe, her husband and four children, Grace, Roy, Pearl and Julia as her only heirs. In 1896, Charles Fyffe remarried and Lee Fyffe, Cynthia Fyffe now Holsen and Fred Fyffe, appellees herein, were the only children of that marriage. Pearl and Julia, children of the first marriage died intestate in April 1905, unmarried, leaving their father, the brother and sister of the first marriage and appellees as their heirs.

In 1906, Charles Fyffe, individually and as guardian of Roy and Grace who were then minors, executed an oil and gas lease to C. L. Wise. The lease granted and conveyed to the lessee all the oil and gas in and under said premises and granted the exclusive right to enter and drill for wells, to erect and maintain buildings and other equipment necessary in the development and

operation of the wells. The lessors were to have one-eighth of the oil produced and provision was made for payment for gas. The lease was for a period of five years and as long thereafter as oil and gas were produced. A well was to be developed within 180 days or the lessee was to pay one dollar per acre each year that the completion of the well was delayed.

The lessee, Wise, assigned his interest in the lease and by successive assignments the International Oil and Gas Company, appellant herein, became the owner of an undivided one-half interest in said lease in March 1907. On the trial it was stipulated that appellant has since 1911 operated the lands and sold all of the working interest oil and after paying the expenses distributed the money to the other owners of the lease. A number of wells were developed and large quantities of oil and gas have been taken out covering a period from 1907 when the first well began to produce to the institution of this suit in August 1931.

Lee Fyffe and Cynthia Holsen, two of the three appellees, filed a bill for partition of the lands and for an accounting of the oil and gas taken. Charles Fyffe, Roy and Grace, the surviving children of the first marriage, Fred Fyffe, International Oil and Gas Company and other oil companies engaged in the purchase and transportation of oil and gas, were made defendants. The title of appellees as tenants in common was contested by Roy Fyffe and Grace Denison on the grounds that their interest was barred by the 20-year statute of limitations but a decree was entered finding that Lee, Cynthia and Fred, children of the second marriage each had a 2/28th's interest subject to the dower of their father and on appeal by Roy Fyffe and Grace Denison that decree was affirmed. *Fyffe v. Fyffe,* 350 Ill. 620.

After the decree was affirmed by the Supreme Court, the case was referred to a special master who stated an

account. A decree was entered ordering partition and finding that there was due from appellant to each of appellees the sum of $5,237.83. This appeal is from that decree and involves questions in reference to the accounting feature of the litigation. The suit having been instituted prior to the adoption of the Civil Practice Act all pleadings have been filed under the former chancery practice.

When the cause was redocketed in the trial court for further proceedings appellant, resisting appellees demand for an accounting, asked leave to file an amended answer which specially pleaded the five-year statute of limitations. The court reserved ruling on appellant's motion until after the special master's report was filed and then denied leave to file it.

On this appeal appellant contends that the five-year Limitations Act was applicable and the court's ruling denying it leave to file the amended answer deprived it of that defense. Appellees contend that the original decree entered 1932 was a final decree on the question of appellant's liability to account and that since appellant did not appeal from such decree it is final and appellant waived the right to plead the five-year Limitations Act.

The bill alleged the execution of the lease March 22, 1906, by Charles Fyffe, individually and as guardian for Roy Fyffe and Grace Fyffe to C. L. Wise, assignments of the lease by Wise and various successive assignments vesting the title to part of the lease in appellant. It alleged the development of the wells and the productions of oil and gas by appellant and the sale of it to certain other companies who were made parties defendant. It was alleged that oil and gas had been produced since 1906 but that appellant had produced and marketed oil and gas from the premises since June 11, 1911. The prayer was for partition of the

lands and accounting for rents and profits and for oil and gas produced from said premises.

Appellant's answer admitted the execution of the lease, alleged various successive assignments of the leasehold interest leading to its title and ownership of a part thereof. It was alleged that it had paid to its lessors the one-eighth part of the oil and gas provided for in the lease, that it did not know until April, 1931, that the appellees had any interest in the lands, that they expended large sums of money developing the wells and pumping the oil, that the appellees lived in the vicinity of the wells and never made any protest or claim of interest and that therefore they had been guilty of laches. It neither admitted nor denied the complainants' allegations of heirship but prayed strict proof, alleged that it and its predecessors in title had been in possession under said lease from 1906 to April, 1931, without knowledge of complainants' interest that they acted in good faith and under the belief that the lessors named in the lease were the sole owners of the premises, that such possession had been open, visible and exclusive. The answer was amended specifically pleading the 20-year statute of limitations.

Evidence was heard before the court and a decree entered finding that Charles Fyffe farmed the lands prior to the development of the oil wells, that the premises were unimproved with buildings at that time, that Charles Fyffe executed an oil and gas lease in 1906, that the appellant became the owner of it in 1907 and has since that date operated the wells and produced oil and gas which have been marketed in large quantities, that the records of the amounts and prices is in the custody of the defendants, that in order to fix and determine the rights of complainants with reference to the defendants, that an account be taken between the parties. The decree ordered that an account be taken

"between the parties hereto with reference to the rents and profits that have issued or arisen from said above described premises, including all oil and gas . . . that have been produced and marketed from said premises, and that the said accounting shall be taken between the parties hereto, as between the complainants and the defendants." It ordered that defendants produce the books, records, etc. and that said accounting shall be taken by this court "that this court reserves the determination of all matters touching the said accounting until after the same has been taken and due consideration thereof has been had." The appellant did not perfect an appeal from that decree.

A decree is final and appealable only when it terminates the litigation between all the parties on the merits so that when it is affirmed the court below has only to proceed with its execution. A decree is final and appealable even though incidental matters may be reserved for consideration and it directs a reference to a master to state an account. *Free v. The Successful Merchant,* 342 Ill. 27; *Eich v. Czervonko,* 330 Ill. 455.

In *Barnes v. American Brake-Beam Co.,* 238 Ill. 582, it was held that a decree for an accounting which fixes the complainants' rights as to some of the defendants but reserves for final consideration the question of the liability of some other defendants is merely interlocutory. In *Gray v. Ames,* 220 Ill. 251, the decree contained findings of fact as to some of the items involved in the accounting and ordered that the parties produce before the master all books and papers relating to the accounting and specified four subject matters of accounting. It was held that the decree was interlocutory and not a final appealable decree. In *Hynes v. Jennings,* 262 Ill. 268, which was a suit for partition and accounting, the decree contained findings of fact in reference to the collection of rents by certain tenants

in common and then concluded that the matter of the accounting should be reserved in toto for the future consideration of the court and it was held that the decree was interlocutory and not appealable. In *Smith v. Bunge,* 358 Ill. 229, 231, it was said, "A final decree is one which fully decides and finally disposes of the rights of the parties to the cause. Where accounts are to be settled between the parties and the decree contains an order of reference by which the accounts are to be stated according to certain principles fixed by the decree the decree is final, but where the chancellor fails to fix the principle by which the accounts are to be stated and future judicial action and discretion on his part are contemplated and necessary, or where some equity different from the equities involved in the accounting remains for further adjudication, then such decree is interlocutory, unless the status of the account or matter to be thereafter determined is apart from the other equities involved."

In *Quayle v. Guild,* 83 Ill. 553, the court reversed a decree for an accounting between copartners. The answer among other things alleged the statute of limitations. On the second appeal, 91 Ill. 378, appellees contended that the former decree was final on the question of liability to account and that the application of the Limitations Act was not before the court on the second appeal. The court held the first decree to be interlocutory as against the defense of the statute of limitations. On page 390 the court said, "Where the suit is for an account, all the evidence necessary to be read at the hearing is that which proves the defendant to be an accounting party, and then the decree to account follows of course; and any evidence as to the particular items of an account, however useful they may be in a subsequent stage of the cause, would be irrelevant at the original hearing. 2 Dan. Ch. Pr.

(Perkins' ed.) 854. The Statute of Limitations was set up here in the answer. When so set up, defendant can not have that part of his answer constituting a distinct and substantive bar disposed of before the cause is ready for hearing on all the pleadings and proofs. *McLin v. McNamara,* 1 Dev. & Batt. 408. Hence, the only proper time for passing upon the defence of the statute was not until after the account had been taken, and at the final hearing. There could not have been made a proper application of the Statute of Limitations to the case until there had been a statement of the details of the account.''

Under the principles announced in these cases we hold that the decree of January, 1932, was not final as to the Limitations Act appellant sought to plead.

On the former appeal Roy and Grace contended that appellees' rights as tenants in common were barred by the 20-year statute of limitations but the Supreme Court held that under the relationship as it existed between appellees and their father, brother and sister, the statute did not begin to run until appellees attained their ages of majority and since the suit was started within 20 years from those dates their rights were not barred.

As tenants in common each had an equal right with his cotenants to enter upon the whole land and every part of it and his possession was not unlawful so long as he did not exclude his cotenant. The interest of each cotenant could be conveyed and each had the right to grant a lessee the right of possession in the common property, subject to the limitation that he could not grant to a lessee any greater right of possession than he himself possessed. One cotenant could not by lease grant to his lessee any right that would interfere with the rights of his cotenant.

The lease which was given to appellant purported on its face to grant to it all the oil and gas in and under

said premises with the exclusive right to enter thereon at all times to drill and operate wells for oil and gas, to erect buildings, pipe lines and other appliances deemed necessary or convenient for the production of oil and gas save and except that lessors were to have one-eighth part of all oil produced and saved. Although the lease purports to grant all the oil and gas and exclusive possession, it was not binding on appellees and was void as far as their interests were concerned. *Zeigler v. Brenneman,* 237 Ill. 15.

There is a conflict in authorities as to the right of one tenant in common to grant to a third party the right to take oil and gas from the common property, *Prairie Oil & Gas Co. v. Allen,* 2 F. (2d) 566, 40 A. L. R. 1388; *Earp v. Mid-Continent Petroleum Corp.,* 167 Okla. 86, 27 P. (2d) 855, 91 A. L. R. 188, but under the authority of *Murray v. Haverty,* 70 Ill. 318 and *Zeigler v. Brenneman, supra,* we are of the opinion that no such right rests in a tenant in common in this State. However in this case the oil and gas has been removed from the common property without the consent of appellees and we are only concerned with the rights of accounting on an equitable basis.

Sec. 1, ch. 2, Cahill's Ill. Rev. St. 1933, ¶ 2, which was in force when this suit was instituted, provided that where one or more tenants in common in real estate or any interest therein shall take and use the property or benefits thereof in greater proportion than his or their interest, he shall be required to account.

In *Wolkau v. Wolkau,* 202 Ill. App. 387, in an action of an accounting between tenants in common the defendant pleaded the five-year statute of limitations. It was held that the statute did not begin to run against the party instituting the suit, until there was a demand for an accounting and a refusal or a repudiation of the tenancy.

If the five-year Limitations Act would not start to run against a cotenant in an action for accounting by one cotenant against the other until there was a refusal following a demand or a repudiation of the tenancy, we cannot perceive how a lessee of such cotenant could equitably claim the benefit of the statute except upon the same conditions his lessor might assert it. If the rule were otherwise, then one tenant could lease the common property and the lessee could in an action against him for accounting by his lessor's cotenant, plead the statute when such defense would not be available to his lessor. The lease does not clothe the lessee with any greater rights against lessor's cotenant than the lessor himself possessed.

The evidence is that appellees were ignorant of their interests in the land until January, 1931, and appellant had no knowledge of appellees' claim of title until April, 1931, and since there was no demand for accounting followed by refusal or a repudiation of the tenancy the five-year Limitations Act did not begin to run and appellant's rights were not prejudiced by the court's refusal to let it plead such act.

Appellant contends that inasmuch as its lease gives to it a freehold estate and that it went into possession under a lease which purported to convey the whole title to the oil except the royalty interest and having operated thereunder continuously and without interruption under claim of absolute ownership of the whole of the working interest in the oil and gas for more than 20 years before the institution of this suit and for more than two years after appellees arrived at their legal majority that appellees are therefore barred from asserting any rights as against appellant for oil and gas by reason of the 20-year Limitations Act.

It has been held that a lease which grants to the lessee the right to enter upon land for the purpose of prospecting and operating for oil and gas, laying pipe

lines and other structures to produce, save and care for the products is a conveyance of an interest in the land itself, is of indefinite duration and is a freehold estate in the land, *Transcontinental Oil Co. v. Emmerson,* 298 Ill. 394; *Ohio Oil Co. v. Daughtee,* 240 Ill. 361, and title to it could be acquired by adverse possession under the statute of limitations. *Catlin Coal Co. v. Lloyd,* 176 Ill. 275.

To establish a title under sec. 1 of the Limitations Act, Ill. Rev. Stat. 1937, ch. 83, § 1; Jones Ill. Stats. Ann. 107.259, not only must there be 20 years, continuous, uninterrupted possession but such possession must be hostile in its inception and so continue. It must be visible, exclusive and notorious, and be acquired and retained under claim of title inconsistent with that of the true owners. All these elements must concur. *Stowell v. Lynch,* 269 Ill. 437; *Downing v. Mayes,* 153 Ill. 330; *Reuter v. Stuckart,* 181 Ill. 529; *Clark v. Jackson,* 222 Ill. 13.

In *Fyffe v. Fyffe, supra,* in referring to this lease, the court said, "The appellants, the appellees and their father were in possession of the land under a common title as tenants in common. The only occupation (prior to the lease) was by the father farming. That occupation was under his title to 4/28th's of the land in common and was the equal possession of all the co-tenants. His lease, with Grace, to Wise did not change the relation. It is presumed to have been made for the benefit of all the cotenants. The actual possession of the land by the lessee was not adverse to any of the cotenants but was subservient to their title."

This statement to the effect of this lease was binding on the trial court and is controlling here, and therefore appellants' entry was not hostile at its inception and the evidence does not disclose that it did become so at any time during the occupancy of the premises. The

20-year statute of limitations did not bar appellees' right of recovery.

Appellant contends that appellees were guilty of laches. Appellant's only defense is by reason of the statute of limitations. In fixing the period in which rights and claims will be barred by laches equity follows the law, and as a general rule, where the period of limitation is fixed by statute, courts of equity will by analogy adopt the same period. If appellees' rights are not barred by the statute of limitations they are not barred by laches unless in addition to mere delay, there would be something in their conduct or the circumstances that would make it inequitable to permit them to assert their claim. *Thomas v. Chapin,* 274 Ill. 95; *Compton v. Johnson,* 240 Ill. 621; *Stowell v. Lynch, supra.* Nothing of that kind has been shown.

Appellant argues that since appellees stood by and watched the development and operation of the wells, the construction of buildings, machinery and equipment for the production and saving of the oil that they are estopped to assert their claims.

Where silence is the ground of estoppel it is essential that the party estopped shall have knowledge of the facts and the other party be ignorant of the truth and be misled into doing that which he would not have done except for such silence. *Bradley v. Lightcap,* 202 Ill. 154; *Mullaney v. Duffy,* 145 Ill. 559.

In *Zeigler v. Brenneman, supra,* a father and his children were tenants in common in a tract of land. The father acting upon the belief that he was the holder of the entire title, executed an oil and gas lease for the entire title. The children shared in that belief for a considerable period of time and made no claim of interest until after a paying well had been developed. The court, on page 22, said, "It is contended by appellants that these children, by their silence and acquiescence while appellants expended large sums of money

and demonstrated the great value of the property, are estopped to assert, as against the appellants, their title to the premises or to object to appellants operating the land for oil. There is evidence which tends to show, and the court found, that these children were ignorant of the fact that they owned any interest in this land until after appellants' well was brought in. With this finding of fact we are not disposed to interfere. Within a reasonable time after they so ascertained that they owned an interest in the land they gave notice to appellants. No estoppel arises against them, because during the time of their silence they were ignorant of the fact that they owned an interest in the land.''

Fred Fyffe, one of the appellees, was made a party defendant to the original suit. He defaulted. Appellant insists that the court erred in stating an account for him and against appellant. The bill alleged Fred Fyffe's interest in the land that he had not executed the lease and prayed for an accounting against Fred Fyffe, the other tenants in common and appellant.

Fred Fyffe was a codefendant of appellant and the rule under the former chancery practice was that equities arising between codefendants could only be adjusted on cross-bill filed by the party seeking such aid of the court. *Ballance v. Underhill,* 4 Ill. 453; *Houck v. Herrick,* 187 Ill. App. 579; *Babcock v. Farwell,* 189 Ill. App. 279.

The court erred in stating an account between the codefendant, Fred Fyffe, and appellant.

Appellant contends that since it owned only one-half interest in the lease that it should have been charged with only one-half of the royalties. The answer to this contention is found in the stipulation which is that appellant has owned one-half interest in the lease since 1907 and since 1911 has operated the lands and sold all of the working interest oil and after the payment of expenses has distributed the money to the respective

owners of the lease. Appellant removed the oil and sold it and it was not incumbent upon appellees to trace the proceeds to appellant's co-owners to whom it had made payment. That would involve equities between appellant and its co-owners with which appellees are not concerned.

It is further contended that appellant's co-owners of the lease should have been made parties defendant. The original bill did not pray for a cancellation of the lease but did ask for a partition of the lands and if that could not be done that the same including the oil and gas rights be sold. The original decree directed a sale of such rights but the commissioners appointed to make partition found the property indivisible and fixed a value exclusive of all oil and gas rights or royalties and the decree of sale directed that the lands be sold excepting therefrom all royalty and leasehold interests arising under any and all oil and gas leases upon said premises.

Appellant was not interested in the sale of the land when sold subject to its lease and therefore cannot complain of change from the original decree. Since we hold that appellees did not have to proceed against appellant's co-owners in the accounting they were not necessary parties in the accounting feature of the suit. Under the stipulation appellant was in possession representing the whole ownership of the lease and inasmuch as appellees did not ask for a cancellation of the lease or for any relief that would effect its terms, the co-owner of appellant in the lease was not a necessary party to the accounting feature of the case.

Appellant contends that since Charles Fyffe had an unassigned dower interest in the lands that the interests of each of appellees is subject to such dower and that in fixing the amount due from appellant to appellees, deduction should be made for such dower. It is further contended that the proceeds from the oil and

gas should be considered on a basis of rents and profits from the land which would be one-third interest. As heretofore pointed out the lease created a freehold estate and under the authority of *Ohio Oil Co. v. Daughtee, supra,* the lease is to be considered as a sale or conveyance of a portion of the land. We do not regard the oil taken as a rent or issue from the land which would entitle Charles Fyffe to one-third absolute. Charles Fyffe is not asking for such dower but inasmuch as appellant is a lessee of his and has paid him royalties there are certain equities between them which would entitle appellant to retain it as against appellees.

The remaining question is the proper measure of damages. The trial court based its decree upon the statement contained in the opinion of the Supreme Court that it (the lease) is presumed to have been made for the benefit of all the cotenants and made an allowance based on the one-eighth royalty provided for in the lease after making deductions for expenses incurred in production. Appellees have assigned cross errors and contend that the measure of damages is to be on the basis that appellant was a willful trespasser as to appellees' interests, that the provisions of the lease are not controlling as to the royalty and that appellant is not entitled to any deductions for expenses of production.

In view of the fact that appellant was in possession in good faith and under a lease which the Supreme Court has said must be presumed to have been made for the benefit of all and the further fact that appellees being ignorant of their rights made no protest, it should not be now held to account as a willful trespasser. In the application of the rule in reference to the five-year statute of limitations we have held that the lessee had no greater rights than its lessor as against its lessor's tenants in common and in equity and good conscience the reverse of that rule should be true.

The reasoning and logic adopted by the court of appeals in *New Domain Oil & Gas Co. v. McKinney*, 188 Ky. 183 in announcing the measure of damages as between cotenants is equally applicable to a lessee of a cotenant who entered upon the premises under the circumstances of this case. The court there said, ''In cases of a willful trespasser the rule seems to be well settled, as will be seen from the authorities, supra, that the plaintiff is entitled to recover, in a suit for an accounting, the value of the mineral, without deducting any expenses incurred in mining it. But we do not understand that this stern rule should be applied in cases where a cotenant operates the mine with the knowledge of his cotenant's interest. Especially should this rule not be applied against a cotenant where the mineral involved is of a fugacious nature and liable to be exhausted by adjacent operators. In such case if one tenant is able and willing to develop the mine and extract the oil before it is entirely lost, and his cotenant is not, he should be allowed to do so without incurring the penalty of accounting to his cotenant for the gross amount of oil produced; but since he may not convert, to any extent, his cotenant's interest, he must account to the latter for his proportion of the net value of the oil produced, which is its market value, less the cost of extracting and marketing. Any other rule, it seems to us, would be not only inequitable, but illogical; for, if the operating tenant could be made liable for the gross amount of the plaintiff's proportion of the oil produced, the rights of the former would be fixed according to the rules governing an operation by a willful trespasser who had no interest whatever in the mineral. We cannot believe that an exclusive operation by one joint tenant is so tainted with wrong as against his cotenant as to require the application of the same rules that should be applied to a willful trespasser. Moreover, it would be illogical to say that a cotenant could law-

fully operate the joint property (as he may do, Thornton, supra, § 312) and at the same time be compelled to divide the gross proceeds or profits with his joint tenant, thus circumscribing his rights according to the rule applicable to a willful and malicious trespasser without pretense of title or right. There is no rule of law known to us that would render the plaintiff cotenant immune from the observance of that healthy maxim, 'He who seeks equity must do equity,' and the equity which plaintiff in such cases is required to do is to pay his proportionate part of the actual expenses of operation and marketing, if they are not above that which is usual and customary in that locality.''

The court's ruling as to the measure of damages was correct.

That part of the decree which found an amount due Fred Fyffe is reversed and that part which found an amount due to Lee Fyffe and Cynthia Holsen is reversed and the cause is remanded with directions to compute the value of the dower of Charles Fyffe in the amounts found due Lee Fyffe and Cynthia Holsen and give appellant credit for such dower on the amount found due from it to Lee Fyffe and Cynthia Holsen and the decree is in all other respects affirmed.

*Reversed and remanded with directions.*